STEPHENS v. GALL et al.

(District Court D. Kansas, First Division. June 6, 1910.)

1. CORPORATIONS (§ 370*)—POWERS—SCOPE.

The scope of a corporation's business is limited by its charter.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1511–1515; Dec. Dig. § 370.*]

2. CORPORATIONS (§ 400*)—AGENT'S AUTHORITY—LIMITATION.

A corporation's agent has no implied authority to bind a corporation by contracts not within its charter powers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1587; Dec. Dig. § 400.*]

3. CORPORATIONS (§ 379*)—POWERS—PARTNERSHIP RELATIONS.

A corporation chartered to buy and sell grain, etc., for its customers, cannot form a partnership relation with another.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1538; Dec. Dig. § 379.*

Power to form partnership, see note to Wallerstein v. Ervin, 50 C. C. A. 131.]

4. PRINCIPAL AND AGENT (§ 69*)—RIGHTS OF AGENT—INTEREST IN CONTRACTS.

An agent cannot use his fiduciary relation to obtain personal advantages from a contract made for his principal, and there can be no implied understanding between them of a joint interest in such contracts.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130–145; Dec. Dig. § 69.*]

5. PRINCIPAL AND AGENT (§ 69*)—AGENT'S ACTS—VALIDITY.

Acts of an agent tending to violate his fiduciary duty are not only invalid as to the principal, but are against public policy.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 69.*]

6. ACCOUNT (§ 10*)—JOINT RELATIONS.

Since an agent of a commission company could not make a valid brokerage contract with complainant whereby the company was made the agent's partner in the transaction and he would share in the profits, of which disability complainant knew, complainant cannot compel a joint accounting between the agent and the company.

[Ed. Note.—For other cases, see Account, Dec. Dig. § 10.*]

7. EQUITY (§ 228*)—DEMURRER—SUFFICIENCY.

Under the express terms of Equity Rule 31, a demurrer to a bill is insufficient when not accompanied by a certificate that it is well founded in law and by an affidavit that it is not interposed for delay.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 228.*]

Bill by William A. Stephens against J. E. Gall and the Christie Grain Company. On defendants' demurrers to the bill. Defendant Gall's demurrer sustained and the company's dismissed.

Francis C. Downey and J. B. Larimer, for complainant.
Wheeler & Switzer, for defendant Gall.
Getty & Carson, for defendant Christie Grain Co.

PHILIPS, District Judge. This is a bill in equity for an accounting. Its substantive recitations and allegations are that the Christie Grain Company, at the times in question, was and is a corporation

organized under the laws of Kansas, engaged in the transaction of a general brokerage business at Kansas City, Wyandotte county, Kan., including the business of purchasing and selling grain, stocks, and bonds for its customers; that the defendant Gall at the times in question was the agent of said Christie Grain Company, representative and correspondent thereof, authorized to represent said corporation in its business matters at Topeka, Kan.; that in August, 1907, the complainant entered into an agreement with said company, through its said agent Gall and with said Gall that the company and he as brokers of the complainant would purchase on his behalf corn, wheat, oats, and corporate stocks, or securities, known as Chicago, Milwaukee & St. Paul Railway stocks or shares, Union Pacific Railway stocks or shares, Great Northern Railway stocks or shares, Amalgamated Copper stocks or shares, and other stocks and securities too numerous to enumerate, the purchase money of which the defendants were to advance, the complainant to pay lawful interest thereon; that said property and securities so purchased were to be left in the hands and possession of the said brokers as security for money advanced the Christie Grain Company through its agent and representative Gall, and with said Gall, such sums of money as should be demanded from the complainant from time to time for the protection and reimbursement of the defendants, and to take, receive, and pay for grain, stocks, and securities upon demand of the defendants, and to pay defendants the customary commission and compensation for said services.

The bill then proceeds to state that between August, 1907, and April, 1908, the complainant directed the said company, through its agent Gall and said Gall, to make numerous purchases for him of corn, wheat, stocks, and other securities; that the complainant in compliance with request of the defendants paid to said company, through its agent Gall, and to said Gall, the sum of $2,700.50 in the course of their employment as such brokers; that they failed and refused to perform the commissions intrusted to them, and neglected to make purchases of various stocks as directed by the complainant; and that they falsely represented to the complainant that they had executed the commissions intrusted to them.

The bill further charges that various moneys confided by the complainant to the custody of the defendants were used by them for such purposes, but they falsely claimed that said moneys had been lost in investments made by them which resulted adversely and in loss to the complainant, or that the moneys had been applied in payment of interest on large sums of money which defendants had advanced for him under said contract, and that they had been compelled to sell the grain, stocks, and securities so purchased to make good balances on advances made by them; which the bill charges were false statements.

The bill further charges a failure and refusal of the defendants to render to complainant an accounting as such agents, and prays for disclosures and accounting.

To this bill the defendant Gall has demurred on the grounds: (1) That the complaint does not show that the complainant is entitled to relief prayed for by the bill against this defendant; and (2) that the

bill is exhibited against him and another defendant for several distinct and independent matters and causes which have no proper relation to each other for a joint accounting.

It must be confessed that this bill is somewhat unique, if not sui generis. So far as I am advised, it has no precedent in kind. It must, therefore, stand or fall as tested by established principles or reason of the law. It is to be kept in mind that in so far as the Christie Grain Company, a corporation, is concerned, the contract in question, claimed to have been made by it, was through Gall as its agent doing business for it at Topeka, Kan. The bill discloses that the business of the corporation was the purchase and sale of grain, stocks, and bonds for its customers. Its business was limited of course by its charter. Gall, the agent, had no implied authority to make any other kind of contract or enter into any other character of transaction than the purchase and sale of such grain, stocks, bonds, and securities from and for its customers. The entire commissions and profits arising from such brokerage business would inure to the benefit of the principal, in which Gall, as agent, on well-settled rules of the law of agency, could not participate. This fact, in so far as the allegations of the bill are concerned, the complainant was aware of when he dealt with Gall, for he knew that he was dealing with Gall as the agent of the defendant company. Yet the bill baldly asserts that Gall made the arrangement in question as agent for the corporation, and also for himself, whereby Gall consented as agent of the corporation with himself individually to act as broker for the complainant in a transaction in which he was to participate in the usual broker's commission with his principal, and this without any averment of knowledge thereof on the part of the principal, and without asserting any ratification thereof by the company. In other words, the agent of the company entered into a contract in effect of a copartnership relation between his principal·and himself individually, whereby he and his principal are claimed to have become jointly liable as agents of the complainant, and whereby· he was ·to share jointly with his principal in conducting a brokerage business, and sharing the fees and compensations with his principal.

Such corporation cannot enter into a copartnership relation with another person. Neither can a person enter into a contract with himself. And there is no rule of law more firmly rooted in sound policy and morals than that an agent cannot use his fiduciary relation to obtain for himself the advantages or rewards of a contract made in the name of his principal. Nor will the law imply an understanding between him and his principal of a joint interest in contracts made by him in his fiduciary relation.

"It is the primary purpose of the creation of an agency to authorize the agent to act for and in behalf òf the principal. It is, therefore, the primary duty of the agent in executing the authority to so act as to secure to the principal the benefits to be derived from the performance, and to impose upon him the responsibilities arising therefrom. In other words, it is the primary function of the agent to bind the principal and ·not himself, to third persons, and likewise to bind such third persons to the principal and not to himself." Mechem on Agency, § 408.

Therefore it is axiomatic in the law of agency that it looks with jealousy upon all transactions of the agent "and condemns, not only as invalid as to the principal, but as repugnant to the public policy, everything which tends to destroy that reliance." Keighler v. Savage Mfg. Co., 12 Md. 383, 71 Am. Dec. 600. So Mechem on Agency, § 455, thus expresses the rule:

"Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal."

This doctrine, as stated by the court in Tisdale v. Tisdale, 2 Sneed (Tenn.) 596, 64 Am. Dec. 775, "has its foundation, not so much in the commission of actual fraud, as in that profound knowledge of the human heart which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth that 'a man cannot serve two masters.' "

Gall without the consent and authority of the company could not, as its agent, purchase grain, stocks, and securities, and at the same time by agreement with himself as agent and in his own right for their joint benefit. Such a transaction was contrary to sound public policy, and this complainant, so far as it appears from the bill of complaint, knew at the time that Gall was claiming to act as agent for the defendant corporation, and as matter of law he knew that Gall was not authorized to enter into such arrangement so as to bind the company jointly with himself in his independent, individual character.

It is not necessary, however, for the court on this demurrer to decide whether or not if Gall agreed expressly or impliedly with the complainant that he would act for him, and so received the complainant's money, which he misapplied or failed to render an account of, he could be held liable in a separate action against him for his stewardship. What I do hold is that on the facts disclosed by this bill Gall, as agent of the Christie Grain Company, had no authority to enter into a contract with the complainant whereby he undertook to make his principal, a corporation, his partner in the transaction, whereby he could share in the commissions and profits arising therefrom; that, as the complainant knew at the time of the engagement of Gall's disability, he has no joint cause of action against Gall and the company for a joint accounting; that inasmuch as the liability of the two defendants, if any, arises out of and depends upon different facts and rules of law as applied to them respectively, they cannot be called upon after this fashion for a joint accounting. The demurrer is sustained.

The defendant Christie Grain Company has filed a separate demurrer stating as grounds thereof that it appears that the bill and its allegations are uncertain and indefinite as to what stocks the complainant claims were to be handled and purchased for him; what purchases were directed or ordered by him; what moneys were expended therefor by defendants or this defendant; what purchases were wrongfully reported by defendants to complainant; or which of the many engagements or many commissions intrusted to them this defendant failed to perform.

Why this defendant did not file a general demurrer to the bill raising the questions above discussed, instead of the special demurrer, is not perceived. But it is sufficient to say that this demurrer cannot be entertained for the reason that rule 31 of equity rules provides that:

"No demurrer or plea shall be allowed to be filed to any bill unless upon a certificate of counsel that, in his opinion, it is well founded in point of law, and supported by the affidavit of the defendant that it is not interposed for delay, and that the plea is true in point of fact."

No such certificate to the demurrer is made by counsel, nor is it supported by the proper affidavit of the defendant that it is not interposed for delay.