**In re LUTHER.**

No. 17840.

District Court, W. D. Missouri, W. D.
April 21, 1945.

Paul .D. Kitt, of Chillicothe, Mo., and Roy P. Swanson and Charles M. Blackmar (of Michaels, Blackmar, Newkirk, Eager & Swanson), both of Kansas City, Mo., for bankrupt.

Frank P. Barker, of Kansas City, Mo., Chauncey H. Clarke, of St. Louis, Mo., and Don Chapman, of Chillicothe, Mo., for interveners.

REEVES, District Judge.

From two separate orders of the Referee in Bankruptcy creditors, or claimed creditors, have filed petitions to review. In one of the orders the Referee declined to entertain jurisdiction where a sole creditor had filed an involuntary petition in bankruptcy on the ground that there were in fact more than twelve creditors of the alleged bankrupt. The other order was in like manner a refusal to entertain jurisdiction on the ground that three of the four creditors joined or intervening in a petition for involuntary bankruptcy were not in fact creditors and were not entitled to join or intervene in such proceeding.

On the first question, admittedly, there were more than twelve creditors but they were composed largely of small creditors to whom the alleged bankrupt was indebted on current accounts. It was and is the theory of the original petitioners that the rule or doctrine of de minimis non curat lex was applicable. On the second

question, purchasers of real estate from the alleged bankrupt as the agent for the principal creditor contend that the purchase price paid by them was in excess of that reported by the alleged bankrupt to his principal, and that they were entitled to recover the amount wrongfully retained by him and remaining in his hands.

Concededly the alleged bankrupt acted in an agency capacity for the principal creditor in the sale of real estate held and owned by it and he was clothed with power to determine the purchase price to be asked or demanded in such sales. The principal creditor relied upon his judgment and fidelity in all of such transactions. Purely legal questions are raised. Such questions will be discussed in this memorandum opinion and additional facts may be stated in the discussion.

 1. Subdivision e, Section 95, Title 11 U.S.C.A., specifically provides how computation shall be made in determining the number of creditors to be counted in a case like this. It is as follows: "(e) In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted (1) such creditors as were employed by the bankrupt at the time of the filing of the petition; (2) creditors who are relatives of the bankrupt, * * *; (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; (4) secured creditors whose claims are fully secured; and (5) creditors who have received preferences, liens, or transfers void or voidable under this title."

It will be noted that the statute indicates what creditors shall not be counted. By proper construction under the rule, "Inclusio unius est exclusio alterius," other creditors would be counted. The very fact that the items are small would not warrant their exclusion, nor neither would their exclusion be warranted under the rule de minimis non curat lex. There are cases where the latter doctrine is properly applicable in bankruptcy but not in a case of this character.

Able counsel for the petitioning creditors have some support in the books for their position. District Judge Rippey for the Western District of New York, In re Murray D.C., 14 F.Supp. 146, loc. cit. 147,

collated the authorities on both sides of the question and then upon reason and the weight of the authorities adhered to the rule requiring such small current claims to be counted. Among the cases sustaining the right of the small creditors to be counted was that of Grigsby-Grunow Co. v. Hieb Radio Supply Co., 8 Cir., 71 F.2d 113, loc. cit. 114. This case was decided by the Court of Appeals, this circuit, and hence is binding as a statement of the law for the guidance of the judges. In upholding the right to count current claims, the court said in relation to the argument of the petitioning creditors: "However persuasive this argument may be, it is one which might more properly be addressed to the Congress than to the court." The Referee was right in dismissing the petition of a sole creditor upon the ground that there were in fact more than twelve creditors properly computed under the provision of said subdivision e, Section 95, Title 11, supra.

2. The next question presented is whether the purchasers of property from the same creditor, through the agency of the alleged bankrupt, were entitled to be classed as creditors as having just claims against the alleged bankrupt. One of them (Barnhardt) offered to pay $840 for a tract of land and contracted to pay that much. The alleged bankrupt reported the offer to his principal as $400, and, upon his recommendation, his principal accepted the offer. By manipulation of the forms in the contract he showed his principal a proposal of $400 whereas the contract with the purchaser showed a consideration of $840; thereby the alleged bankrupt was able to withhold $440 from his principal. An identical procedure was followed in the other two cases (Culling and Schaffner). In the first case, Culling offered to pay $1,485, whereas the offer was reported at $990; it was accepted. Culling paid $1,-485 but the alleged bankrupt withheld from his principal $495. In the last case, Schaffner offered $940. The offer was reported at $470 and accepted. Again bankrupt withheld from his principal $470.

 No misrepresentations were made to the purchasers. They were familiar with the land. They made offers to purchase at a stated price, to an authorized agent of the principal creditor. So far as they were concerned the offers were accepted and the money paid. They obtained the

land. The alleged bankrupt was not their agent; he had made no misrepresentation to them concerning the property and he owed them no duty whatever. In dealing with him they were not obliged even to see that he made an honest report to his principal. The alleged bankrupt did owe an obligation to his principal. Under all of the authorities it was his clear duty in transactions affecting the subject matter of his agency to "act with the utmost good faith and loyalty in the interest of his principal; and to make a full disclosure to the principal of all material facts affecting his interest, within the (his) knowledge." Under the law, if he understated to the principal "the best price * * * obtainable, the principal may recover from him the difference between that obtained and that which might have been obtained." 12 C.J.S., Brokers, § 41, pages 96, 98 and 99.

■ The same rule is applied under the law of Agency as set forth in 3 C.J.S., Agency, § 138, p. 6. By § 165, p. 53, of the same volume, it is stated as a fundamental principle of the law: "An agent may be held accountable for all profits in excess of his lawful compensation which he acquires during the course of his agency." Moreover, an agent "may also be compelled to account for any secret commissions or any private collateral benefits which he receives for himself in contracting for his principal." § 165, p. 55, supra.

■ By § 169, p. 59 of the same text, it is stated succinctly as follows: "Ordinarily an agent is accountable only to the principal or those in privity with him." The authorities are many and the books teem with these fundamental rules with respect to the responsibility of an agent to his principal. The courts have even gone so far as to say that public policy forbids that an agent should profit at the expense of his principal. Stephens v. Gall, D.C., 179 F. 938; Abernathy v. State of Oklahoma, 8 Cir., 31 F.2d 547, loc. cit. 552; Rudin v. King-Richardson Co., 7 Cir., 37 F.2d 637, loc. cit. 645.

It is unnecessary to prolong the discussion, as clearly, under all of the authorities, the Referee was correct in refusing to take jurisdiction on the ground that an insufficient number of actual creditors sought to maintain an involuntary proceeding in bankruptcy. His orders should be confirmed.