### Leon E. Lum *vs.* L. B. McEwen *et al.*

Submitted on briefs Jan. 17, 1894.   Affirmed Jan. 19, 1894.

No. 8517.

**Principal and Agent, Loyalty to the trust.**

> The superintendent and general manager of the business of a mill company agreed, in consideration of the payment to him of $5,000 by a third party, to use his influence and authority as such superintendent and manager to secure the removal by the company of its mill to another place, and the extension of its logging road to that place. *Held*, that such agreement was illegal, and against public policy; that it placed the agent in a position where he would naturally be tempted, by his own private interests, to disregard those of his principal.

**Actual injury to the principal, not material.**

> The facts that the policy to be advocated by· him may have been for the best interests of his principal, and that his conduct was not in fact influenced by his personal interest, are not material.

Appeal by defendant, L. B. McEwen, from an order of the District Court of Crow Wing County, *D. B. Searle*, J., made August 15, 1893, denying his motion for a new trial.

The Northern Mill Company, a corporation engaged in lumber business, had its principal place of business at Minneapolis, but owned pine lands and had sawmills in the counties of Cass and Crow Wing. The defendant L. B. McEwen was its agent and had charge of its business in these two counties. The directors of the Mill Company were considering the question of constructing a large sawmill at Brainerd in Crow Wing County, and building a railroad from that point northwest to Lake Kilpatrick, there to connect with their logging railroad to Gull River. The plaintiff, Leon E. Lum, and other citizens of Brainerd and vicinity desired to have the railroad and sawmill built. To aid the enterprise they proposed to vote and donate to the Mill Company the bonds of Crow Wing County to the amount of $100,000. On February 10, 1892, one D. M. Clark was authorized by McEwen to confidentially propose to plaintiff that he give him $5,000 or his note for that sum in consideration of his influence and advice to the Mill Company to accept the citizens' proposal. After some negotiation, the plaintiff a few days thereafter gave to Clark for McEwen a note or agreement of which the following is a copy:

Brainerd, Feb. 24th, 1892.

For value received I promise to pay to D. M. Clark five thousand dollars, nine months from date. On condition that within that time the Northern Mill Company extend its logging railroad from Kilpatrick Lake to Brainerd, and builds, within the city limits, a sawmill capable of cutting one hundred and twenty thousand feet of lumber per day of eleven hours.                     Leon E. Lum.

Plaintiff in fact gave the note in behalf of certain citizens of Brainerd who expected to be benefitted indirectly by the construction of the road and mill. They had authorized plaintiff to act for them in his discretion. Clark had no interest whatever in the note, except as agent for McEwen. He told plaintiff that when the note fell due he (Clark) and other interested citizens of Brainerd would contribute the money to pay it and that meantime the whole thing must be kept a profound secret. He indorsed and delivered the note to McEwen who deposited it with the Iron Exchange Bank of Duluth and it was sent by it for collection to the First National Bank of Brainerd. The proposal was accepted, the bonds were voted and

issued, and the mill and railroad built. McEwen advised the Mill Company in the premises just as he would have done had the note not been given. It did not at all influence his action nor did his recommendation influence the Mill Company in the matter. On the day the note fell due plaintiff commenced this action against Mc-Ewen, Clark and the two banks to have the note adjudged null and void and delivered up and cancelled. The banks and Clark answered disclaiming any interest, but McEwen demanded judgment that the note is valid and that it be delivered to him and for costs.

The issues were tried at Brainerd April 5, 1893. Findings were made and judgment ordered for plaintiff that the note is void and that it be delivered up and cancelled. The court said:

L. B. McEwen as an agent of the Northern Mill Company, owed to his employer in the discharge of his duties, his best judgment uninfluenced by any other consideration. His attempt to secure $5,000 for exercising his influence to induce his employer to adopt a certain policy or extend a railroad to a certain point, is contrary to good morals, and the note given to secure to him that sum is contrary to public policy and void. *West* v. *Camden*, 135 U. S. 507; *Woodstock Iron Co.* v. *Richmond & D. E. Co.*, 129 U. S. 643; *Fuller* v. *Dame*, 18 Pick. 472; *Guernsey* v. *Cook*, 120 Mass. 501; *Bestor* v. *Wathen*, 60 Ill. 138; *Atlee* v. *Fink*, 75 Mo. 100; *Harrington* v. *Victoria G. D. Co.*, 3 Q. B. Div. 549.

While there is an apparent conflict of authority as to when a court of equity will decree contracts of that character to be surrendered for cancellation, the jurisdiction is generally conceded. The conflict is on the question whether or not the jurisdiction ought to be exercised. I am of opinion that in cases like this, where a contract is void because it is against public policy, and such invalidity is not apparent upon the face of the contract, and the contract is still executory, the court ought to exercise its jurisdiction and order the contract delivered up for cancellation. *Hamilton* v. *Cummings*, 1 Johns. Ch. 516; *Porter* v. *Jones*, 6 Coldw. 313; *Osbaldiston* v. *Simpson*, 13 Sim. 513; 2 Pomeroy, Eq. J., §§ 937–940.

*F. F. Davis*, for appellant.

The defendant L. B. McEwen, was an employe of the Northern Mill Company at the time when the note was executed. He was not

a stockholder, a director or an officer in that company. He entered into no arrangement to violate any duty which he owed his employer, and there is no evidence that the location of the plant of the Northen Mill Company at Brainerd and the extension of its railroad was not for the best interests of that company, or did not subserve the public interests. There is no fraud or violation of a fiduciary relation, or failure to perform a duty, or laxness in the performance of such duty apparent, either in the note itself or in the action of McEwen relative thereto.

*Flannery & Cooke,* for respondent.

That the contract is void as against public policy seems to us too clear to admit of argument. McEwen was superintendent of the Northern Mill Company and owed to his employer in the discharge of his duties his best judgment, uninfluenced by any considerations other than its interest, and his attempt to secure five thousand dollars for exercising his influence to induce his employer to adopt a certain policy is contrary to good morals, and a contract which secures to him such benefits is contrary to public policy and void.

McEwen testified that he made no recommendation because of the note which he would not have made had it not been given. If he discharged his duties to his employer without any reference to the note, then he gave to the plaintiff no consideration for it. It is idle to contend that plaintiff intended the five thousand dollars as a gift, or that McEwen accepted it as such. In determining the question whether or not a contract is void as against public policy, it is immaterial whether or not the employer was damaged. In such a case it is sufficient that the consideration upon which the contract was made was intended to be a corrupt one.

MITCHELL, J. It is only necessary to consider one of numerous questions argued by counsel.

The defendant McEwen was the superintendent and general manager of the business of the Northern Mill Company. That company had a sawmill on Gull river, eight miles from Brainerd, and also a logging railroad extending from Kilpatrick lake, 25 miles from Brainerd, some distance out into the woods. The mill company had

under consideration a plan for remodeling its mill, and extending its logging road to Gull river, where the mill was situated.

At this juncture of affairs, in consideration of McEwen's agreement to use his influence and authority as superintendent and manager of the mill company to secure the removal of its mill and the extension of its road to Brainerd, the plaintiff executed the obligation in suit, by which he promised to pay to defendant Clark $5,000 nine months after date, on condition that within that time the mill company extended its logging railroad to Brainerd, and built within the limits of that city a sawmill of a specified capacity. This note was given for the benefit of McEwen, but was made payable to Clark, in order to conceal McEwen's connection with the matter. That this contract was illegal and void on grounds of public policy will not admit of a moment's doubt. Loyalty to his trust is the first duty which an agent owes to his principal. Reliance upon an agent's integrity, fidelity, and capacity is the moving consideration in the creation of all agencies; and the law condemns, as repugnant to public policy, everything which tends to destroy that reliance. The agent cannot put himself in such relations that his own personal interests become antagonistic to those of his principal. He will not be allowed to serve two masters without the intelligent consent of both.

Actual injury is not the principle the law proceeds on, in holding such transactions void. Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. In the matter of determining the policy of removing the mill and extending the road, McEwen, in the discharge of his duties, whether merely that of making recommendations, or of exercising authority to act, owed to his principal the exercise of his best judgment and ability, uninfluenced by any antagonistic personal interests of his own. His attempt to secure $5,000 to himself was calculated to bias his mind in favor of the policy upon which the payment of the money was conditioned, regardless of the interests of the mill company. It is not material that no actual injury to the company resulted, or that the policy recommended may have been for its best interest.

Courts will not inquire into these matters. It is enough to know that the agent in fact placed himself in such relations that he might be tempted by his own interests to disregard those of his principal.

The transaction was nothing more or less than the acceptance by the agent of a bribe to perform his duties in the manner desired by the person who gave the bribe. Such a contract is void.

This doctrine rests on such plain principles of law, as well as common business honesty, that the citation of authorities is unnecessary. The doctrine is perhaps as clearly and concisely expressed as anywhere in *Harrington* v. *Victoria Graving Dock Co.,* 3 Q. B. Div. 549. The fact that the validity of such transaction is attempted to be sustained in courts of justice does not speak well for the state of the public conscience on the subject of loyalty to trusts in business affairs.

This was an action by the maker of the instrument to have it surrendered up and canceled. In view of the relation which he bears to the transaction, there may be some doubt whether courts should give him affirmative relief. But defendants do not raise the point, and we only advert to it in order that this case may not be considered an authority on the question.

Order affirmed.

(Opinion published 57 N. W. Rep. 662.)

