## CHENEY ET AL. v. UNROE.

[No. 20,803.   Filed May 29, 1906.]

1. CONTRACTS.—*Officers.*—*Duty.*—*Public Policy.*—A contract entered into by a public officer, the tendency of which is to lessen his performance of public duty, is contrary to public policy, and void.   p. 552.

2. SAME.—*Violation of Statutes.*—Contracts entered into in violation of statutes are void.   p. 552.

3. PRINCIPAL AND AGENT.—*Officers.*—*Serving Two Masters.*—An agent cannot serve two masters whose business transactions may be antagonistic.   p. 553.

4. OFFICERS. — *Highway Superintendent.*—*Statutes.*—A person appointed by the board of commissioners as the superintendent of the construction of a highway under §6869 Burns 1901, Acts 1901, p. 439, §2, is a public officer; and it is his duty to protect the public's interest in the construction of such highway. p. 553.

5. CONTRACTS. — *Officers.*—*Highway Superintendents.*—*Working for Contractors.*—A contract by which a highway superintendent agrees to labor for the contractors for the construction of such highway, is void, though no fraud be shown, the law requiring officers to occupy a position free from the appearance of evil.   p. 554.

6. TRIAL.—*Contracts.*—*Complaint.*—*General Denial.*—*What Admissible Under.*—A general denial to a complaint counting upon an agreement of defendant highway contractors to pay plaintiff highway superintendent $1.50 per day for labor on such highway requires plaintiff to establish a contract under which he has a right to recover, and any evidence going to destroy the cause of action is admissible thereunder.   p. 556.

From Newton Circuit Court; *Charles W. Hanley,* Judge.

Action by John E. Unroe against George M. Cheney and others.   From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Reversed.*

*Emory B. Sellers,* for appellants.
*William Cummings,* for appellee.

HADLEY, J.—This is an action upon an open account for work and labor which appellee claims he performed for appellants in the construction of a certain macadamized road in White county. The road was constructed under the provisions of the free gravel road act of 1901 (Acts 1901, p. 449, §6899 *et seq.* Burns 1901). The appellants were the contractors, and appellee the superintendent of the road, under appointment and pay of the board of commissioners. The complaint counts on a special contract for work and labor at $1.50 per day, but it is not shown that the work was performed on the road of which the plaintiff was the superintendent. The answer was the general denial, and payment. Verdict and judgment for plaintiff for the amount of his claim. The questions presented arise under the overruling of appellants' motion for a new trial.

The plaintiff testified that he was appointed superintendent by the board of commissioners and gave bond for the faithful discharge of his duties, namely, to see that the contractors executed the work of construction strictly in accordance with the terms and specifications of their contract, and his compensation was to be $1.50 per day. Under his said appointment he acted as superintendent 224 days, for which the county paid him at the contract rate. During the time he was acting as superintendent he also worked for the contractors (appellants) at general and common labor on the road, under a contract that he was to receive for his work the same price paid the other hands on the road. Under this contract he worked for appellants 167 days and had received from them $54 on account. On cross-examination he testified as follows: "Why did you work for $1.50 per day? A. Because I was getting work from both parties. You worked for the county, and for those whom you were employed to watch, and got pay from both? A. Yes, sir; and I earned my money."

Touching the testimony, appellants, at the proper time, requested the court to give to the jury the following in-

struction: "If you find from the evidence that the defendants were engaged in the construction of a public macadam road in White county, Indiana, during the year 1900, under contract with the board of commissioners of said county, and that the plaintiff was appointed by said board superintendent of said road, and qualified and gave bond as such superintendent, and entered upon the discharge of his duties as such officer, and so acted upon said road during the progress of the construction of the same, and if you further find that the work and labor sued for was done by plaintiff on said road while he was superintendent thereon and acting as such and not otherwise, he would not be entitled to recover anything therefor, whether the defendants employed him to do such work or not, and it will be your duty to find for the defendants." The refusal of the court to give this instruction presents the principal question in the case.

There is a class of contracts, entered into by officers and agents of the public, which naturally tends to induce the officer, or agent, to become remiss in his duty to 1. the public, that the courts unhesitatingly pronounces illegal and void as being contrary to public policy.

As indicating the State's disapproval of kindred contracts, the legislature has provided as follows: "Any * * * county commissioner, * * * or their 2. appointees or agents, * * * who shall, during the time he may occupy such office * * * be interested, directly or indirectly, in any contract for the construction of * * * work of any kind erected or built for the use of the * * * township, * * * shall be fined * * * and imprisoned in the state prison," etc. §2136 Burns 1901, §2049 R. S. 1881. All contracts entered into in contravention of the statute are utterly void. *Wingate* v. *Harrison School Tp.* (1877), 59 Ind. 520; *Case* v.

*Johnson* (1883), 91 Ind. 477; *Benton* v. *Hamilton* (1887), 110 Ind. 294.

It remains to be seen whether the contract sued on falls within the general class referred to above. "It is a well-established and salutary doctrine," says a distin-

3. guished author, "that he who is entrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based on principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well-regulated system of jurisprudence prevails." 1 Dillon, Mun. Corp. (4th ed.), §444. The principle is stated in 1 Clark & Skyles, Agency, §39(e), as follows: "Any contract of agency by a public officer by which he binds himself to violate his duty to the public, or which places him in a position which is inconsistent with his duty to the public and has a tendency to induce him to violate such duty, is clearly illegal and void." Greenhood, Public Policy, p. 337, states the doctrine thus: "Any contract by one acting in a public capacity, which restricts the free exercise of a discretion vested in him for the public good, is void." See, also, page 337 quoted approvingly in *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 667, 24 L. R. A. 206.

The appellee was appointed superintendent by the board of commissioners pursuant to the statute. §6869 Burns 1901, Acts 1901, p. 439, §2. He was a public

4. officer. *City of Ft. Wayne* v. *Rosenthal* (1881), 75 Ind. 156, 161, 39 Am. Rep. 127. The duties of his appointment required him to be personally present on the road during its construction, and for and on behalf of the taxpayers of the township see to it for them that the road

was constructed in strict accordance with the plans and specifications of the contract. The interests of the tax-payers and contractors were adverse. Otherwise appellee's appointment was a useless expense. The General Assembly, when engaged in framing the statute, evidently deemed it wise to provide for the appointment of some one to guard the interests of those who should be called upon to pay for the improvement, as against the contractor employed to make it. Such provision is in perfect accord with accepted business principles. This conflict of interest is the source whence the rule under consideration acquires its form and force by making the person who has one part entrusted to him incapable of acting or identifying himself with the other side, and by temptation be led away from the duties of his trust.

Influence is a subtle agent. It is often potential when its presence is unsuspected. Appellee testified that when one of the appellants introduced him to the other, the former remarked: "This is to be our superintendent on No. 2, and I think we will find him a reasonable man to deal with; and I think when we get started we will put him to work." This amounted to a declaration of confidence and liberal treatment, and strongly tended to invite return of like sentiment from appellee. The latter's natural desire to please his kind and liberal employers, and to continue to receive his wages, was well calculated to place him in a position where he might be induced by his own feelings and private interests to neglect the interest of the people whose agent and trustee he was. The claim that appellee's acceptance of employment from the contractors while he was acting as superintendent was without fraud and without prejudice to the interests of the taxpayers cannot be allowed. "It is of no consequence," said this court, speaking generally on the subject through Woods, J., in *Waymire* v. *Powell* (1886), 105 Ind. 328, 332, "that no injury, or that an actual benefit, has resulted

from such employment. The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employment, whether made directly or indirectly, utterly void." See *Lum* v. *McEwen* (1894), 56 Minn. 278, 57 N. W. 662. A trustee cannot place himself in a position of antagonism to the beneficiaries of his trust. "An agent, * * * must not put himself in a position which is adverse to that of his principal. As agent he cannot contract with himself personally. He cannot buy what he is employed to sell. If employed to procure a service to be done, he cannot hire himself to do it. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case which comes within its reason." *City of Ft. Wayne* v. *Rosenthal, supra.*

In *Lum* v. *McEwen, supra,* the manager of a lumber manufacturing business agreed with a third person, on the promise of $5,000, to use his influence as such manager to secure the removal by the company of its mill to another place and for the extension of its logging road to that place. The court says: "Actual injury is not the principle the law proceeds on, in holding such transactions void. Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit him to place himself in a position in which they may be tempted by his own private interests to disregard those of his principal."

In *Harrington* v. *Victoria, etc., Dock Co.* (1878), 3 Q. B. D. 549, a railroad company contemplating certain repairs employed the plaintiff as an engineer to advise it in respect thereto. The defendants, having submitted a bid for doing the work, agreed to employ the plaintiff on a five per cent commission to superintend the repairs, if he would use his influence with the railroad company to induce it to accept the defendants' bid. The jury found that the con-

tract, though calculated to bias the plaintiff's mind, had not in fact done so, and that he had not in consequence thereof given less beneficial advice to the company as to the defendants' bid than he otherwise would have done. Cockburn, C. J., assuming that the agreement did not influence the mind of the plaintiff, so as to induce him to do anything dishonest towards his employer, entertained "no doubt but the agreement is a corrupt one and is not enforceable at law, whatever the actual effect produced on the mind." See, also, *Edwards* v. *Estell* (1874), 48 Cal. 194; *City of Toronto* v. *Bowes* (1854), 4 Grant's Ch. 489.

So, in this case, no fact is disclosed by the record to indicate that appellee was negligent or inefficient in protecting the interests of the taxpayers, but, as we have seen, the rule admits of no exception. From these considerations we conclude that appellee, while acting in a trust capacity on behalf of the taxpayers of his township, and at their expense, in safeguarding their interests in the construction of road No. 2, was not in a position to accept employment from the contractors to work for them in making the road. The law forbids the inconsistent position of pretending to serve both the people and the contractors at the same time. The contract sued on being illegal, the courts can afford no relief, and the court erred in refusing to give to the jury instruction one, requested by appellants.

Appellee claims that the illegal nature of the contract was not provable under the issues, viz., the general denial and payment. We think otherwise. In the first place, under the general denial it was encumbent upon the plaintiff to establish a contract upon which he had the right to recover. In endeavoring to do this he disclosed the infirmities of his contract. In the second place, any fact which goes to destroy, not to avoid, the plaintiff's cause of action is provable under the general denial. And facts independent of those averred in the complaint, of a nature affirmative, but which have a negative

effect upon the issues, are also admissible. *Jeffersonville Water Supply Co.* v. *Riter* (1897), 146 Ind. 521; *Hess* v. *Union State Bank* (1901), 156 Ind. 523; *Gwinnup* v. *Shies* (1903), 161 Ind. 500.

For error of the court in refusing to give instruction one, requested by appellants, the judgment must be reversed.    Judgment reversed, and cause remanded, with instructions to grant appellants a new trial.