## R. HARRIS & CO., Inc., v. WELLER.

(Court of Appeals of District of Columbia. Submitted February 9, 1925. Decided March 2, 1925.)

No. 4156.

Principal and agent ⬩157—Purchaser of realty held not entitled to recover payment made to agent of vendor on theory that agent had improperly represented both parties.

Lessee of property, who, on being notified of its sale by agent of undisclosed purchaser, attempted to employ such agent as its agent, to negotiate second sale to it by first purchaser, and paid such agent $10,000, which he later declared was part of purchase price, held not entitled to recover such payment on theory that agent was at same time representing and receiving compensation from vendor; the contract attempted, if made, being invalid.

Appeal from Supreme Court of District of Columbia.

Action by R. Harris & Co., Inc., against Joseph I. Weller. Judgment for defendant, and plaintiff appeals. Affirmed.

J. I. Peyser and G. E. Edelin, both of Washington, D. C., for appellant.

S. C. Peelle and C. F. R. Ogilby, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. R. Harris & Co., a corporation, brought an action in the lower court against Joseph I. Weller, claiming that it had employed him to act as its agent in the purchase of certain real estate situate within the District of Columbia, and had paid him the sum of $10,000 as commissions for his services as such agent, whereas at the same time, without its knowledge or consent, he was also receiving compensation from the vendor of the property for services rendered as his agent in the same transaction. Wherefore the plaintiff prayed for a recovery against him in the sum of $10,000.

In defense of the action the defendant denied that he had acted as agent for the plaintiff in the transaction in question, and alleged furthermore that the issue in the present case is identical with one which was formerly adjudicated adversely to the plaintiff by the Supreme Court of the District in a case between the same parties. It may be stated here that the decree thus pleaded as a former adjudication of the issue was affirmed by this court upon appeal in R. Harris & Co. v. Weller et al., 52 App. D. C. 6, 280 F. 980. The opinion in that case, written by Mr. Justice Robb, so fully presents the facts and circumstances of the transaction in question that it becomes unnecessary to go into great detail here.

The issue in the present case went to trial before the court and jury, and at the close of the plaintiff's evidence a verdict was directed in favor of the defendant. Judgment was entered accordingly, whereupon the plaintiff appealed.

Several witnesses testified in behalf of the plaintiff at the trial. Their testimony contained substantial contradictions and inconsistencies, but for the present purpose the evidence must be given the most favorable construction which it may bear in favor of the plaintiff's claim. This is to be drawn almost entirely from the testimony of Mr. Peyser, who was the secretary and general counsel of the company, and was its chief representative throughout the transaction.

It appears that R. Harris & Co., and its predecessors under the same name, had been engaged for many years in the jewelry business in the city of Washington, occupying certain rooms in the Jenifer Building, which it rented from the owner of the building, and that it desired and expected to renew its lease from time to time, in order to continue business in the same premises. In the month of April, 1919, at a time when its current lease had several years to run, the company received two letters from Mr. Weller, a local lawyer and real estate agent, to the effect that he had recently negotiated a sale of the Jenifer Building, that a client of his had purchased the property with the intention of occupying it as a place of business, and inquiring whether his client could not also purchase the unexpired lease from the company. The name of the new owner of the building was not disclosed in the letters, nor did it become known to the company at any time during the transaction which followed. The record title to the property had been taken in the name of a clerk in Mr. Weller's office, but it was well understood that the title was held in trust for another as the true owner, and notice was served upon the company to pay the rental for the premises to the defendant as the agent of the owner. Thereupon negotiations were had relative to a sale of the company's lease to the purchaser of the property, but without result. The company then sought to purchase the property from the new owner. It is claimed that the plaintiff at this time employed the defendant as its agent, the testimony of Mr. Peyser upon that subject being as follows:

" * * * I said: 'Brother Weller'—I knew him pretty well; I think we went to law school together. I said: 'Brother Weller, my folks are very much worried about this transaction. We have been in business there for 40 years, and we do not want to be put out of the place. Is there not some way in which a lease or a sale could be made?' He said: 'No, the price would be so outrageous that it would be almost impossible for anyone to handle it.' I said: 'If you can buy the building on any kind of terms at all, we will stretch a point. We will employ you and retain you. I will give you—' He said: 'It is not necessary.' I offered him then and there ten thousand ($10,000) dollars to represent R. Harris & Co. in the purchase of the building. He accepted it, and the interview testified to by Mr. Strauss, when we met at Mr. Wolf's house —I went down to Mr. Wolf's home on Q street, near Nineteenth street, around in that neighborhood somewhere, and I saw him there, and I said: 'As far as this payment is concerned of ten thousand dollars ($10,-

000), we will pay you that if we buy the property. We are hereby employing you.' And we did then and there employ him, and there is no question in the world that he was employed by us. * * * "

On November 1, 1919, a written contract for the sale of the property to R. Harris & Co. for a consideration of $415,000 was drawn up and afterwards signed by the parties. It recited that the agreement was made by and between Joseph I. Weller, as agent for the vendor, and R. Harris & Co., as vendee. It was signed in the same manner; the name of Mr. Weller's principal not being disclosed in the contract. The last clause of this contract reads as follows:

"Approved by the agent of the owner of the above described property under authority to him by said owner. Of the purchase price of $415,000, the sum of $405,000 shall apply on account of purchase price and $10,000 on account of fee charge."

Afterwards a modified contract was similarly executed by the parties, and substituted for the first one. In the latter contract the consideration was stated as $405,000, but it was understood and agreed verbally that the actual payment should nevertheless be $415,000, as named in the first contract, of which $10,000 should be paid as a fee charge. The transaction was settled accordingly. Upon the subject of this contract Mr. Peyser testified as follows:

"The first question or the first time that the question of employment came up was when the original contract was made, contract Exhibit No. 19, and I had gone to the hospital to see Mr. Wolf, who was there; he had broken his arm, and I came away, and I phoned to Mr. Weller's office, and I told him that I was not so satisfied with the contract as it was presented; that it ought to state that he was the agent for us. He said: 'That is only a matter of form, and I will correct that eventually.' He said: 'The idea, after all, is to obtain the building.' He said: 'I am your agent, and I will deal with you.' I do not know just when that contract No. 19 was signed, but the contract No. 16 was signed the same day as the final account was stated by the Columbia Title Company, and when we got down to Mr. Weller's office, after Mr. Weller had made an engagement and failed to keep it at the title office. We got down to Mr. Weller's office somewhere about 10:25, as the indorsement is on the paper in my handwriting, and we had a call three times from Mr. Weller; but when he got down there he turned to Mr. Wolf and said: 'Have you shown Peyser the new contract?' Wolf said: 'No; not as yet. I have not discussed the proposition with him.' Mr. Wolf showed me the contract, which is known as 'Contract No. 16.' and I saw that the price of the property was going to be $405,000, and I spoke about that; it was to be $405,000 in the original agreement, and I thought that we had better go back to the original agreement. He said that he understood that he was to be your agent and get $10,000 from us. I imagine that this contract would change it, but the contract speaks for itself; but I said: 'It states in there that he was to be agent for the owner.' He said: 'That is a matter of form, and your settlement will show that you paid $415,000 for the property.' I waited for the settlement, and gave him the check, and waited for Mr. Marsh to prepare the statement, showing that the property was bought for $415,000, and it had that notation on it, and it was never understood otherwise than that Weller was there representing us; we were paying the man, and he was to my mind an employee—"

Mr. Peyser also testified that he had not discovered until in August, 1922, that Mr. Weller had been paid a commission by the vendor of the property, in addition to the sum of $10,000 paid to him by R. Harris & Co.

The testimony of Mr. Weyl, treasurer of Lansburgh & Bro., was to the effect that the firm of Lansburgh & Bro., were the undisclosed purchasers and owners of the property in question; that Mr. Weller had acted as their agent when purchasing it from the former owner, and continued to act in that capacity in the transaction with R. Harris & Co.; that Lansburgh & Bro. knew and approved of the arrangement whereby the latter company paid $10,000 to him as part of the consideration for the property. The plaintiff also tendered the testimony of this witness to the effect that Lansburgh & Bro. subsequently paid additional compensation to Mr. Weller for services rendered in this transaction; but this was excluded by the court upon the ground that under the plaintiff's evidence the tendered testimony was immaterial.

The testimony of Mr. Straus, president and treasurer of R. Harris & Co., was to the effect that it was understood by the parties at the time of the transaction that Mr. Weller was acting as the agent of the undisclosed owner of the property, and had not been employed to act as agent for the plaintiff, and that the $10,000 were paid to him as a fee charge, as part of the consideration paid to the vendors.

At the close of the plaintiff's evidence the

defendant moved for a directed verdict, upon the ground that the evidence clearly proved that Mr. Weller was acting as the agent of the undisclosed owner of the property during the entire transaction, that this fact was well known to the plaintiff, and that, if the plaintiff then paid him a sum of money to work for the plaintiff's interests and against the interests of his principal, its conduct would necessarily be in bad faith, and no right of action could accrue to it against the agent upon the contract. The court directed a verdict for the defendant upon that ground, and this appeal is brought to review its ruling.

We may say without extended discussion that we agree with the ruling of the trial court. The testimony is undisputed that Mr. Weller was acting in the transaction as the representative of the undisclosed owners of the property, and it is certain that this fact was all the time well known to the plaintiff. Under these circumstances it would be wrongful and illegal for the plaintiff's officers or agents to employ him to act as its agent in the same transaction. In point of interests the buyer and seller of the property were necessarily adverse to one another; consequently an agent could not at the same time faithfully serve both of them. Under such circumstances it would not be permitted for either party to secretly employ the agent of the other to act against the interests of his principal, and such a contract would not be enforced either at law or in equity. It is true that Mr. Peyser testified that he protested against secrecy and wished to have the facts stated openly in the contract. It is not pretended, however, that this was actually done. It is true, also, that Mr. Weyl testified that Lansburgh & Bro. knew all the time of the payment of the $10,000 to Mr. Weller, but they did not owe this information to any act of the plaintiff. Holman v. Johnson, 1 Cowp. 343; Union Collection Co. v. Buckman, 150 Cal. 159, 88 P. 708, 9 L. R. A. (N. S.) 568, 119 Am. St. Rep. 164; 11 Ann. Cas. 609; Lum v. McEwen, 56 Minn. 278, 57 N. W. 662; Howard & Lyons v. Murphy, 70 N. J. Law, 141, 56 A. 143, 1 Ann. Cas. 571; Bollman v. Loomis, 41 Conn. 581; Maine Northwest Development Co. v. Northern Commercial Co. (D. C.) 213 F. 103.

We have not overlooked the fact that the defendant denies that he was employed by the plaintiff as its agent, or received commissions for services rendered for it; his claim being that the $10,000 fee was paid by plaintiff as part of the consideration for the property payable to the vendors. In R. Harris & Co. v. Weller, supra, this court, speaking of this payment, said:

"It meant, and could have meant, only one thing, namely, that the purchaser was to pay the agent a fee of $10,000. While it is customary for the owner to pay such a fee, it is not at all unusual for an express agreement to the contrary to be made."

The court is disposing of the present case, however, upon the evidence submitted in behalf of the plaintiff alone, since that was the basis of the order directing a verdict for the defendant. In this view of the case we need not discuss the issue of res adjudicata.

The judgment of the lower court is affirmed, with costs.