**ABERNATHY et al. v. STATE OF OKLAHOMA, ex rel. GOAR et al.**

Circuit Court of Appeals, Eighth Circuit.
April 19, 1929.

No. 8170.

**548**

C. B. Stuart and John Tomerlin, both of Oklahoma City, Okl. (G. C. Abernathy, of Shawnee, Okl., on the brief), for appellants.

Roy F. Lewis and Tom C. Waldrep, both of Shawnee, Okl. (Randall Pitman, Goode, Dierker & Goode and Waldrep & Jones, all of Shawnee, Okl., on the brief), for appellees.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

KENYON, Circuit Judge. ■ This is an action at law brought in pursuance of the laws of Oklahoma, State, for Use of Board of Com'rs of Osage County, v. McCurdy, 115 Okl. 111, 241 P. 816, by that state, on relation of the county commissioners of Pottawatomie county, Okl., against the administrator of the estate of Robert Lee Alexander, deceased, formerly treasurer of said county, and the American Surety Company of New York, surety on the bond of said Alexander, to recover the sum of $75,000, public funds belonging to the sinking fund of said county, alleged to have been misappropriated by him in the purchase of certain bonds of the town of Devol, Okl. Said sinking fund of Pottawatomie county was created to take care of outstanding obligations which matured within five years from August 20, 1920. August 26, 1920, said county treasurer took $18,000 worth of bonds out of the investment account of the county and sold them to the Tecumseh National Bank. The money received therefor, was part of that used to purchase the $75,000 of bonds of the town of Devol, which bonds would not mature before 1946. It is without question that all the outstanding bonds and indebtedness of the county on the 26th day of August, 1920, were due and payable before the maturity of the Devol bonds. The county treasurer received a secret commission of $7,500 from the sellers of said bonds. A jury was waived in writing, and the trial court, upon request, made certain special findings of fact and announced conclusions of law. These findings of fact have the same effect as the verdict of a jury, and will not be disturbed if there is any substantial evidence to support them. 28 USCA § 773; Highway Trailer Co. v. City of Des Moines, Iowa (C. C. A.) 298 F. 71; Hirning v. Live Stock Nat. Bank (C. C. A.) 1 F.(2d) 307; Fleischmann Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624.

■ Under 28 USCA § 875, the findings being special, if the record warrants it our review may extend to the determination of the sufficiency of the facts found to support the judgment.

One of the court's findings of fact of controlling importance is: "I therefore find that this bribe money or corruption money was actually paid to Mr. Alexander the county treasurer." There was substantial evidence to support such finding; therefore it stands as established that the county treasurer entered into a corrupt contract with the seller of the bonds under which he received a commission of $7,500. The trial court also found that the Devol bonds were worth their face with interest, which was the amount paid therefor by the county treasurer; that while the county treasurer had the authority to invest the sinking fund of the county in said bonds, the contract was tainted with fraud and corruption; that the transaction was carried out by the county treasurer in violation of his trust and under the influence of a corrupting agreement which rendered the whole matter illegal and invalid; that the county had not ratified the contract by any action it had taken; that it was entitled to disaffirm the contract and be put back where it would have been "if no unfaithful action had been taken by its county treasurer," and that it was not important whether the county had lost or gained in the transaction; that the bond of the surety company, reciting "if he shall faithfully perform his duties," makes the company responsible for the act of the county treasurer, and that the county was entitled to recover the $75,000 which was wrongfully paid out by reason of the corruption of the county treasurer regardless of the value of the bonds purchased. A judgment was entered for said amount against appellants.

The main contention of appellants is that the amount of recovery should be the secret commission of $7,500 received by the treasurer and not the $75,000 paid out for the bonds of the town of Devol.

■ We consider first the question of the authority of the treasurer to invest the funds of the county in bonds or securities that did not mature prior to the date of the maturity of the obligations for which the sinking fund was created. The trial court held under the authority of National Surety Co. v. State, 111 Okl. 180, 239 P. 257, 261, that the treasurer had a right to purchase the bonds out of the sinking fund of the county. There is language in that case which undoubtedly is authority for that holding. Since that time however the Supreme Court of Oklahoma in the case of Bockoven v. Board of Com'rs, 131 Okl. 114, 267 P. 1053, has finally disposed of the question, and has taken a different view of the law from that suggested in National Surety Co. v. State, supra, and has squarely held that a county treasurer in Oklahoma can invest sinking funds in enumerated public securities which mature before the obligations to be paid out of such funds, but that the county treasurer and his surety are liable for purchasing, with the sinking fund, securities maturing after the maturity of securities payable out of said sinking fund. That is the last pronouncement of the Supreme Court of Oklahoma on the subject, which court suggests that it does raise a conflict with certain language employed by it in National Surety Co. v. State, supra. In construing a state statute the federal court is bound by the settled construction thereof by the highest judicial tribunal of the state where no question of general or commercial law or of right under the Constitution or laws of the United States is involved. Sioux City Terminal R. & W. Co. v. Trust Co. of North America (C. C. A.) 82 F. 124; Mudge v. Black, Sheridan & Wilson (C. C. A.) 224 F. 919; Mississippi Valley Trust Co. v. Railway Steel S. Co. (C. C. A.) 258 F. 346; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 173 U. S. 99, 19 S. Ct. 341, 43 L. Ed. 628.

■ In view of the latest construction of the Oklahoma statute by the Supreme Court of that state, the treasurer had no authority to buy the bonds here involved. Notwithstanding what the law was at the time of the decision by the trial court, we think we should follow the last-settled construction of the statute by the Supreme Court of Oklahoma. Were we under no limitation as to the construction of the statute by any decision of the state Supreme Court, we should have no hesitancy in holding that a county treasurer in Oklahoma had no authority to invest the moneys of the sinking fund of a county in bonds not maturing in time to take care of the very obligations for which the sinking fund was created. Appellants insist that if the court take this view of the case then the action is barred by the statute of limitations. No finding was asked on this question. While pleaded it was never called to the attention of the court, and the court did not pass on it in any way. Therefore it is probably not before us at all. However we refer to it briefly.

Appellants claim that under subdivision 2 of section 185, Comp. Okl. Stat. for 1921, which reads as follows, "Limitation of other actions. Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * ° * Second. Within three years: An action upon a contract express or implied, not in writing; an action upon a liability created by statute, other than a forfeiture or penalty," the action is barred because not brought within three years.

Appellees on the other hand contend that the action properly arises under the fifth subdivision of said section reading as follows: "Fifth. An action upon the official bond or undertaking of an executor, administrator, guardian, sheriff or any other officer, or upon the bond or undertaking given in attachment, injunction, arrest or in any case whatever required by the statute, can only be brought within five years after the cause of action shall have accrued," and therefore the action is not barred.

■ There is no question of the statute of limitations as to that part of the complaint dealing with the question of fraud, it being without dispute that the fraud was not discovered until 1926, and the statute does not commence to run until discovery of the fraud. Morrissey v. Carter, 103 Okl. 36, 229 P. 510. If the three-year subdivision is to apply, then the action to recover, outside of the question of fraud, would concededly be barred. Two decisions of the Supreme Court of Oklahoma, National Surety Co. v. State, 111 Okl. 180, 239 P. 257, and State for Use of Board of Com'rs of Osage County v. McCurdy, 115 Okl. 111, 241 P. 816, seem conclusively to establish that the five-year limitation is the one applicable. In the latter the court says (syllabus): "Where suit is brought against a county treasurer and the sureties on his official bond, for the value of securities unaccounted for by the county treasurer, the one-year statute of limitations does not apply; but the action is upon a written contract—the surety bond—and the five-year statute of limitations applies."

■ The cause of action we are now discussing arose when the board of county commissioners knew in their official capacity of the wrongful act of the treasurer in using its money to buy the bonds maturing after the maturity of bonds protected by the sinking fund. National Bank of Claremore v. Jefferies, 126 Okl. 283, 259 P. 260. The record is not clear as to just when this information came to said board—hence we would be unable to determine when the statute of limitations commenced to run. Appellants do not claim that if the five-year limitation applies the action is barred. In view of the fact that the time when the cause of action accrued is not definitely ascertainable from the record, and, further, as the court was not asked to make any finding of fact or conclusion of law as to the statute of limitations, and as appellants do not claim the action will be barred if the five-year limitation applies, we are justified in holding that the cause of action based on want of authority in the treasurer to purchase the bonds was not barred by the statute of limitations.

The bond of appellant, surety company, is in part as follows: "Now, Therefore the condition of this obligation is such that if the said Robert Lee Alexander or his deputy or deputies and all persons employed in his office shall, on and after July 7th, 1919, faithfully and promptly perform the duties of his office, and if the said Robert Lee Alexander and his deputies shall pay according to law all moneys which shall come to his hand as Treasurer, and will render a just and true account thereof whenever required by said Board of County Commissioners or by any provision of law, and shall deliver over to his successor in office or to any other person authorized by law to receive the same, all moneys, books, papers, and other things appertaining thereto, or belonging to said office, then the above obligation to be void; otherwise to be in full force and effect."

■■ The purchase of the Devol bonds was, in the light of the latest decision of the Supreme Court of Oklahoma, hereinbefore referred to, a violation of the treasurer's duty; it was an act without authority of law, and was a misappropriation of the county's money which the estate of Alexander and the surety company were liable for. While this runs counter to certain conclusions of law of the trial court, we think, if the general judgment of the trial court is correct, it should be sustained regardless of the reasons therefor enunciated by the trial judge. The result may be right, though the reasons given therefor may be erroneous. While

there may be some doubt on this feature of the case because of the supposed status of the law regarding the right of the treasurer to purchase such bonds at the time he did, there is, we think, no doubt as to the second proposition involved, which is the one upon which the court based its decision. It is that the alleged contract for the purchase of the Devol bonds was brought about through corruption by bribery of the county treasurer, and that the transaction might be and was rescinded by the county, and is to be regarded as wholly illegal and invalid. We consider this entirely separate from the first proposition discussed. The case presents upon this proposition a situation where a public official holding a position of trust, in charge of the moneys of a county, collected by the process of taxation, betrays his trust and receives a secret commission of $7,500 for his own use and benefit from those who sell to the county, through him, bonds of the town of Devol. Such contracts have been condemned by the courts in unmeasured terms. This treasurer became by this indefensible action as much the agent of the seller of the bonds as he was of the buyer thereof. His relationship to the transaction was changed thereby. Port Huron Machinery Co. v. Chicago, M. & St. P. R. Co., 199 Iowa, 295, 201 N. W. 779. Both the agent of the county and the seller of the bonds were in pari delicto, and the law should leave them, if possible, just where it finds them. If the seller of the bonds had not received the money from the agent of the county who had been corrupted, and had sued upon the contract of purchase, and it appeared that the agent of the county had received, to use a polite term, a commission, but which was in fact a bribe to influence said agent to take the bonds for its principal, no court would long consider the case, and no one would have the hardihood to urge that such a contract should be enforced. It is the duty of an agent, even of a private party, to look singly to the good of his principal—not to attempt to line his own pockets with ill-gotten gains. That he cannot serve two masters and serve both faithfully is as true in law as in Holy Writ. He should not be permitted to occupy a position where duty is likely to be forgotten in the quest for personal gain. How vastly more is this true as to one who occupies a public position of trust and confidence. In United States v. Mammoth Oil Co., 14 F.(2d) 705, 717, this court said: "If a government official, engaged in making contracts for the government, receives pecuniary favor from one with whom such contracts are made, a

fraud is committed on the government, and it matters not that the government is subjected to no pecuniary loss, or that the contract might have been an advantageous one to it. The entire transaction is tainted with favoritism, collusion, and corruption, defeating the proper and lawful function of the government." This is just as true as to a county official. The highest degree of fairness, honesty, and fidelity to the public is required of public officials. Where a public official, such as Alexander was, enters into a secret corrupt agreement, as the court found he did, that agreement is void at the option of his principal, the county, as contrary to sound public policy. This must be true if government by the people is to endure, for its perpetuity depends on the honesty of those who administer it. The governing body, be it national, state, or local, is not required to show any injury arising from the corrupt act in order to repudiate it. It is not compelled to accept the fruit of a corrupt and illicit contract made by its agent. The law will not force on the principal the result of a dishonest act. It can drop the transaction and wash its hands thereof as soon as the fraud is discovered. Otherwise public officials can gamble on the chance of not being discovered, resting assured that if discovered their civil liability will only be for that which they have received, and their innocent principal will be compelled to keep the property. Such doctrine is destructive of any sound public policy and is indefensible, either in the realm of morals or of law. We refer to some of the authorities out of the many dealing with this subject. The rule is stated in 31 Cyc. p. 1573 as follows: "(2) Collusion Between Agent And Third Party. A fortiori the principal may avoid contracts made by the agent as the result of fraud or collusion between the agent and the third party; and the payment of a secret commission, bribe, or gratuity to the agent by the third party as an inducement for entering into contractual relations on behalf of his principal, or an agreement to pay such commission, is such collusion as entitles the principal to avoid the contract."

In discussing an action to recover on an agreement for compensation to procure a contract from the government to furnish it supplies, the Supreme Court in Providence Tool Co. v. Norris, 2 Wall. 45, 55 (17 L. Ed. 868), discussed the broad question of public policy involved in an agreement for compensation to procure legislation, saying: "There is no real difference in principle between agreements to procure favors from legislative bodies, and agreements to procure favors in the shape of contracts from the heads of departments. The introduction of improper elements to control the action of both, is the direct and inevitable result of all such arrangements." The court also said, "The law looks to the general tendency of such agreements; and it closes the door to temptation, by refusing them recognition in any of the courts of the country," and held that the law should and did strike down such contracts from their inception.

In City of Findlay v. Pertz et al. (C. C. A.) 66 F. 427, 434, 435, 29 A. L. R. 188, where an agent for the sale of automatic separators was securing a commission from the parties to whom he was selling separators, the court considered the perniciousness of any such agreement, and held that it could not be enforced at law; that its tendency was to corrupt the fidelity of the agent; that it was a fraud upon the principal, and said: "The principle which prevents an agent from contracting with himself, or from entering into any agreement which gives him an interest conflicting with his duty, applies more strongly to the officers, servants, and agents of a municipal government than to private parties. 1 Dill. Mun. Corp. § 444."

On the question of the right of the city to waive the fraud and ratify the purchase, it stated: "It is simply a case of where an agent for the purchase of property from one capacitated to deal with the city is given a gratuity, reward, or commission by the seller, which tended to give that agent an interest conflicting with fidelity to his principal. Upon this discovery of this improper inducement operating upon its agent, the city had a right to repudiate the purchase and return the property bought. This right it might exercise without regard to any actual injury it had sustained, and without regard to the effect of the allowance of the commission upon the integrity of its agent." Speaking of the agent's relation to the city the court said: "His duty was to give to the public service the full benefit of a disinterested judgment and the utmost fidelity. Any agreement or understanding by which his judgment or duty conflicted with his private interest was corrupting in its tendency. We know of no more pernicious influence than that brought about through a system of commissions paid to public agents engaged in buying public supplies. Such arrangements are a fruitful source of public extravagance and peculation. The conflict created between duty and interest is utterly vicious, unspeakably pernicious, and an unmixed evil. Justice, morality, and public policy unite in con-

demning such contracts, and no court will tolerate any suit for their enforcement."

In Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539, the court held that a contract where an officer of a foreign government, to secure purchase of arms by it, agreed to use his influence with another agent of that government in favor of a manufacturing company here, for a commission on the amount of the purchase, could not be enforced in the courts of this country because of the inherent viciousness of the transaction.

The City of Findlay v. Pertz, supra, is quoted at considerable length in United States v. Carter, 217 U. S. 286, 30 S. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594, where the court considered the case of a government officer who was secretly receiving a part of the profits gained by others in the execution of contracts with the government. The general question of corrupt agreements by officers of the government for pecuniary gain was considered in the Naval Reserve Cases, United States v. Pan-American Petroleum Co. et al. (D. C.) 6 F.(2d) 43, and Pan-American Petroleum Co. et al. v. United States (C. C. A.) 9 F.(2d) 761. See, also, on the general subject of agents' acts in violation of fiduciary duty and the question of public policy therein involved as dealt with in the federal courts, Gilbert v. American Surety Co. (C. C. A.) 121 F. 499, 61 L. R. A. 253; Stephens v. Gall (D. C.) 179 F. 938; Glover v. Ames (C. C.) 8 F. 351; Marshall v. Lovell (C. C. A.) 19 F.(2d) 751; Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Hammerschmidt v. United States, 265 U. S. 182, 44 S. Ct. 511, 68 L. Ed. 968; Mammoth Oil Co. v. United States, 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. 137; 21 R. C. L. p. 827, § 11.

The state courts have been fully as pronounced in their utterances as to contracts under which agents have profited corruptly as have the federal courts. In Cheney v. Unroe, 166 Ind. 550, 77 N. E. 1041, 117 Am. St. Rep. 391, discussing the question of officers of public corporations becoming individually interested in public contracts, the court says that it is that "class of contracts, entered into by officers and agents of the public, which naturally tends to induce the officer, or agent, to become remiss in his duty to the public, that the courts unhesitatingly pronounce illegal and void as being contrary to public policy." Hegenmyer v. Marks, 37 Minn. 6, 32 N. W. 785, 5 Am. St. Rep. 808; Lum v. McEwen et al., 56 Minn. 278, 57 N. W. 662; White et al. v. Leech et al. (Iowa) 96 N. W. 709; Torpey v. Murray, 93 Minn.

482, 101 N. W. 609; Empire State Ins. Co. v. American Cent. Ins. Co., 138 N. Y. 446, 34 N. E. 200; Marion Tp. of Boone Co. v. Howard, 196 Ind. 167, 147 N. E. 619; Sterling v. Smith, 97 Cal. 343, 32 P. 320.

Counsel for appellants concede that, where an agent acts in a dual capacity, his acts are voidable in equity, and that the contract for the purchase of the Devol bonds might be voidable in a suit by the county against the seller, but insist that the only remedy against the agent is to recover the secret commission. Where a purchaser of property has been defrauded in said purchase, he has several remedies under the laws of Oklahoma, one of which is that he may rescind the contract and sue at law for the consideration parted with, first offering to restore to the party sued what he has received by virtue of the contract. Howe v. Martin, 23 Okl. 561, 102 P. 128, 138 Am. St. Rep. 840; Byers v. Brisley et al., 81 Okl. 215, 198 P. 90; Jeter v. De Graff, 93 Okl. 76, 219 P. 345. It is true these are cases where the seller was sued, while here the agent is sued, but they lay down general principles of value in part at least applicable to the situation here presented. Here the county chose to rescind the transaction, to ignore it as such, and to sue the county treasurer at law to recover its money which should have been in his hands but had been corruptly used—hence misappropriated. Most of the cases arising out of the betrayal of the principal by his agent are brought against the seller to recover the money paid, proper tender having been made of the property received by the principal. There seem to be few cases where an attempt has been made to recover from the agent. It would have been the usual practice for the county to have rescinded the contract on account of the fraud of the agent, tendered back the bonds to the seller, and to have sued the seller for the $75,000.

Was the county confined to an action against the seller, or could it sue its own agent for the wrongful act committed by him and secure judgment for the $75,000 used to buy the bonds, or was it limited in its recovery to the $7,500 secret commission? That is the real question on this feature of the case.

It is contended the county suffered no loss, because the court found the bonds were worth their face value. If they were, it is not quite understandable why the surety company did not take the bonds, sell them upon the market, and end the litigation. There would be no reason for this lawsuit if the bonds were worth their face value. Indeed it would not have been necessary to cor-

rupt any one to buy them. The county tendered the bonds to the administrator of the estate of the county treasurer and to the surety company, the parties sued. The trial court took charge of them, made provision for their delivery to the surety company if it paid the judgment, and ordered them kept by the clerk of the court until the final determination of the case. The county in no way ratified this transaction and acted with reasonable promptness in disaffirming the same after it knew of the fraud.

The treasurer as a public officer was compelled to account for the county moneys in his possession. He did this by presenting bonds he had purchased as the result of a corrupt conspiracy between himself and the seller. To this the county, in substance, replied that it refused to accept such bonds; that even if the treasurer had the right to buy them under the law as it then stood, the county was under no obligation to take them. The county virtually said to its agent: "Your commission from the seller may have caused you to pay more than the bonds were worth; they might have been secured for less in an honest transaction; your principal, the County, has the right to the exercise of your best discretion and honest judgment uninfluenced by any pecuniary consideration secured by you from those who were selling the bonds to your principal; you have entered into a corrupt agreement violating sound public policy; you cannot compel the County to accept the result of your perfidy and chicanery; it drops the matter where it finds it and calls upon you to return the County's money which you have wrongfully and corruptly parted with." We see no reason why the county had not the right to so declare and to recover from the treasurer and the surety company the amount of the money misappropriated by the county treasurer in the purchase of said bonds by and through a corrupt and illegal agreement. The rescission voided the contract and placed the parties in the same position as if it never had been made. Holcomb & Hoke Mfg. Co. of Indianapolis, Ind. v. Jones, 102 Okl. 175, 228 P. 968. In City of Findlay v. Pertz, supra, the court holds that the city would have the right to hold the agent liable as for money had and received to its use. That doctrine applies here. The condition of the bond providing for faithful performance of the treasurer's duty, hereinbefore set forth, was breached by the treasurer's failure properly to account for $75,000 of the county's money coming into his hands. The county has rescinded the transaction on its part, and elected to hold the treasurer for the wrongful misappropriation of its money. To hold that the only recovery the government or a state or a county has, under circumstances where a public official has violated his trust, is the commission received by such official in carrying out a corrupt agreement, is to open wide the door to all kinds of corrupt practices upon the part of public officials, to encourage juggling of public funds, and to stimulate the practice of sinister chicanery. Public funds in the hands of a county treasurer are a sacred trust and are to be used as provided by the law for the benefit of the county. Where he purchases property for the county under an agreement by which he is receiving a secret commission to serve the party with whom he is dealing, the county has the right to repudiate the entire transaction; to leave the agent and his coconspirators where it finds them, and require the agent to account for the public funds exactly as if the corrupt transaction had never taken place. We are of the opinion that appellees were entitled to judgment against appellants for the $75,000 and interest.

The judgment of the trial court is affirmed.