**NATIONAL SURETY CO. v. STATE, for Use and Benefit of Board of Com'rs of Comanche County, et al.**

No. 14539—Opinion Filed May 5, 1925.

Rehearing Denied Sept. 8, 1925.

**1. Officers—Liability on Bonds—Penalty for Illegal Disposal of Funds—Party Plaintiff.**

It is well settled that sureties on official bonds are not liable for penalties prescribed in section 8590, Comp. St. 1921 (State ex rel. Schilling v. Oklahoma City et al., 67 Okla. 18, 168 Pac. 227; State ex rel. Morrison v. City of Muskogee et al., 70 Okla. 19, 172 Pac. 796) ; also, that where recovery of a penalty prescribed by said section is sought, the action must be prosecuted in the name of the body politic to which the penalty is made payable by the statutes (Territory ex rel. Johnston, Co. Atty., et al. v. Woolsey et al., 35 Okla. 545, 130 Pac. 934; Chicago, R. I. & Ry. Co. v. State ex rel. Gleason, Co. Atty., 52 Okla. 614, 153 Pac. 625).

**2. Counties—Action Against Treasurer for Breach of Bond—Action by State as Use Party.**

Where a suit is brought in the name of the state for the use and benefit of the board of county commissioners against the county treasurer and the sureties upon his official bond, alleging, in effect, a breach of official duty by the treasurer amounting to a breach of a condition of his official bond the action is not for penalties prescribed in section 8590, Comp. St. 1921, but is an action for loss to the county because of a breach of official duty and a breach of a condition of the official bond, and is properly brought in the name of the state for the use and benefit of the board of county commissioners.

**3. Same—Liability of Treasurer for Securities Unaccounted for—Sufficiency of Petition.**

Where, in a case so prosecuted, it is, in effect, alleged that the county treasurer had in his official hands securities purchased with sinking funds belonging to his county, and that such treasurer failed and refused to surrender such securities to his successor in office or account for them in money, the petition states a cause of action in favor of the plaintiff and against the treasurer and

the surety on his official bond for the face value of such securities and accrued interest thereon, according to the terms of such securities.

### 4. Statutes—Sufficiency of Title—Act Providing for Sale of Securities Bought with Sinking Funds.

Section 2 of chapter 207, Session Laws of 1919 (section 8573, Comp. St. 1921), is constitutional.

### 5. Counties—Powers of County Treasurer as to Investment of Sinking Funds.

Section 1 of chapter 207, Session Laws of 1919 (section 8572, Comp. St. 1921), authorizes the county treasurer to invest sinking funds in his hands in the classes of securities named in the section; but no grant of power is therein given to the county treasurer to invest or exchange the securities so purchased by him.

### 6. Same—Liability on Treasurer's Bond—Recovery Sustained.

Record examined; and held, that the judgment should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Comanche County; A. S. Wells, Judge.

Action by the State of Oklahoma, for the use and benefit of the Board of County Commissioners of Comanche County, against Ben J. McGee and National Surety Company, a corporation. Judgment for plaintiff. Defendant Surety Company appeals. Defendant Ben J. McGee has filed a cross-petition in error. Affirmed.

Wilson, Tomerlin & Threlkeld, for plaintiff in error.

George F. Short, Atty. Gen., M. W. McKenzie and V. P. Crowe, Asst. Attys. Gen., and Fletcher S. Riley, Co. Atty., for defendant in error State of Oklahoma.

Opinion by SHACKELFORD, C. This is a suit prosecuted in the name of the state of Oklahoma, for the use and benefit of the county commissioners of Comanche county, against Ben J. McGee, formerly county treasurer of Comanche county, and National Surety Company, a corporation, as surety on the official bond of Ben J. McGee. The action was tried upon an amended petition. It is charged by the plaintiff that Ben J. McGee was treasurer of Comanche county from in July, 1919, to sometime in July, 1921; that the National Surety Company became surety upon his official bond in the sum of $75,000. For a first cause of action it is charged that the said treasurer had in his custody and under his control, $5,500 face value in Liberty Bonds of the United States, which the said treasurer had purchased with sinking funds belonging to the county, and which said bonds were the property of the county; that said bonds were unlawfully disposed of and delivered by the said treasurer to some party unknown to the pleader, in violation of the trust reposed in such county treasurer, and he received no money therefor for the benefit of the county; and that the bonds were of the value of $5,500. Double liability is alleged and judgment is prayed for double the value of the bonds. The second cause of action is the same, except that the amount of the bonds purchased and disposed of are of face value, the sum of $28,200, and of the alleged actual value of said sum. Double liability is alleged and prayed for. A list of the bonds so purchased and disposed of is attached to the petition. The amended petition was attacked by a motion to strike, which was overruled. The defendants separately demurred to the amended petition. The bonding company demurred upon the grounds: (1) That the facts alleged do not state a cause of action in favor of the plaintiff and against the defendant; (2) that the facts stated do not authorize recovery of double the amount of the bonds disposed of as against the surety; and (3) that in no event could a recovery be had against the surety for double the value of the bonds. The defendant Ben J. McGee demurred on the ground that the petition did not state facts sufficient to constitute a cause of action as against him. The demurrers were overruled and exceptions allowed. The defendant National Surety Company answered separately: (1) By general denial except as to matters specifically admitted; (2) the execution of the bond is admitted, but a breach of the conditions of the surety bond is denied; (3) that the treasurer was vested with authority to purchase bonds and also with authority to dispose of them to the best interests of the county; and in disposing of the bonds, acted within the scope of his authority, and his action in so disposing of the bonds was accepted and approved by the county commissioners who ratified his action in making disposition of the bonds, and the plaintiff is estopped from questioning said treasurer's authority; and prays judgment in its favor. The defendant Ben J. McGee answered by general denial.

The cause was submitted to the court upon an agreed statement of facts to the following effect: (1) That Ben J. McGee was

treasurer of Comanche county from the 7th of July, 1919, to the 6th of July, 1921, and that National Surety Company was the surety upon his official bond in the sum of $75,000; that prior to the 24th day of February, 1921, said treasurer had in his custody and control $5,500 in U. S. bonds which he had purchased with cash belonging to the county sinking fund, and that on said date and without the consent of the county commissioners said treasurer disposed of said bonds by exchanging them for Devol city bonds of the face value of $5,500; (2) that prior to the 4th of April, 1921, said treasurer had in his custody and control $28,200 in U. S. bonds which had been purchased with cash out of the county sinking fund, and on said date, without the consent of the county commissioners, said treasurer exchanged said bonds for $13,200 face value of Devol city bonds, and $15,000 face value of Wynona city bonds; (3) that said U. S. bonds were of actual cash value equivalent to the par value, plus accrued interest; (4) that said Devol city and Wynona city bonds were placed in the vaults of the county treasurer, but plaintiff makes no claim to them.

After the agreed statement of facts had been filed, plaintiff obtained leave of the court to amend its amended petition by striking the claim for double liability, and reduced the relief sought to $33,700, the aggregate amounts of the value of the bonds disposed of. The cause was submitted to the court upon the pleadings and agreed statement of facts on April 4, 1923, and the court found the issues in favor of the plaintiff and against the defendants, and entered judgment accordingly for the par value of the bonds disposed of, the aggregate amount of the judgment being $33,748.46. The judgment also fixes the rate of interest at which the various sums making up the aggregate should thereafter run according to the tenor of the several classes of bonds. The court ordered that the county treasurer of Comanche county should retain the Devol city and Wynona city bonds and interest collected thereon until further orders of the court, to be delivered to the defendants upon payment of the judgment.

The defendant National Surety Company prosecutes appeal, and presents the assignment of errors under four propositions:

(1) The surety on the official bond is not liable for penalties.

(2) An action for recovery of a penalty cannot be prosecuted in the name of the state, but must be prosecuted by the board of county commissioners.

(3) Section 2, chapter 207, of the Sess. Laws 1919, relating to investment of sinking funds, is unconstitutional.

(4) Section 1, chapter 207, Sess. Laws 1919, relating to investment of the sinking funds, not only vests the treasurer with authority to invest the county sinking fund, but also vests him with power to invest the bonds so purchased.

The Attorney General concedes the correctness of the position taken by the surety company as to the first and second propositions. It is well settled that sureties on official bonds are not liable for penalties prescribed in section 8590, Comp. Stats. 1921 (State ex rel. Schilling v. Oklahoma City et al., 67 Okla. 18, 168 Pac. 227; State ex rel. Morrison v. City of Muskogee et al., 70 Okla. 19, 172 Pac. 796); also that where recovery of a penalty prescribed by said section is sought, the action must be prosecuted in the name of the body politic to which the penalty is made payable by the statute (Territory ex rel. Johnston, Co. Atty., et al. v. Woolsey et al., 35 Okla. 545, 130 Pac. 934; Chicago, R. I. & P. Ry. Co. v. State ex rel. Gleason, Co. Atty., 52 Okla. 614, 153 Pac. 625).

The National Surety Company insists that the action is for a penalty prescribed by section 8590, supra, and cannot be maintained against it. It is true that in the prayer in the amended petition the state asks for judgment for double the par value of the U. S. bonds disposed of by the county treasurer; but it is not the prayer which controls, and we cannot agree that this is a proceeding for the enforcement of a penalty prescribed by said section. It will be observed that the claim of right to recover double the value of the bonds was struck out of the petition and abandoned. The Attorney General presents the cause as a suit to recover the value of certain bonds which were purchased with sinking funds belonging to Comanche county, and which the treasurer wrongfully and without lawful authority disposed of and failed to account for. He does not seek to enforce a forfeiture or penalty, but is seeking to recover the value of certain of the county's property which came into the hands of the treasurer, and which he converted and was unable to produce; and his failure to produce such property constituted a breach of official duty and of a condition of his surety bond, which provides that the treasurer "shall faithfully and truly perform all the duties of his office and shall pay over and account for all funds coming into his hands by virtue of his said office of county treas-

urer", etc. The treasurer, by virtue of his office, had in his custody and control the sinking fund of his county. By reason of a statute he was authorized to purchase certain securities, including the Liberty Bonds which he had purchased and which he had in his custody and control, and he became bound to perform his official duty by accounting for and turning over to his successor the securities which, under statutory authority, he had purchased with portions of the sinking funds, and his failure constituted a breach of official duty and of his surety bond. The failure to account for the securities purchased by the treasurer is the matter alleged, and the action against him and his surety is for the value of said securities. The action, therefore, is not a suit to recover a penalty or forfeiture, but is a suit to recover the value of certain of the county's property which the treasurer had failed to account for. The security given by the treasurer was in compliance with the provisions of section 5930, Comp. St. 1921, which not only requires that a bond should be given, but provides that action upon such bond may be brought thereon in the name of the state for the use and benefit of the person or persons injured by the violation thereof." The injury here alleged is to the county commissioners of Comanche county, in their official capacity; and the injury is the failure of the county treasurer to account, as the law requires, for the securities purchased by him out of the county's sinking fund under statutory authority. The petition has the effect of alleging a breach of the official duty of the county treasurer and a breach of his official bond, and is properly brought in the name of the state for the use and benefit of the county commissioners of Comanche county.

The third proposition presented is that section 2 of chapter 207, Sess. Laws of 1919, page 294 (section 8573, Comp. St. 1921), is unconstitutional and void. Chapter 207 of the Session Laws of 1919 is amendatory of section 6772, Rev. Laws 1910. The act of 1910 gave authority to an officer having charge of any sinking fund to invest the same in certain securities, when such securities could be purchased at or less than par. The legislative session of 1913 made a further provision for investment of sinking funds in certain classes of securities, including certain classes of bonds, conditioned that such bonds be approved by the Attorney General and shall mature before the maturity of the debt which the sinking fund is being accumulated to pay. Section 8580, Comp. St. 1921. No authority was given to

invest the sinking fund in U. S. bonds. It seems that when the Liberty Bonds were issued certain officers in charge of the sinking funds made investment in that class of securities. The Legislature of 1919 enacted a law amendatory of the said section 6772, in two sections. No question is raised as to the validity of the first section of the act. The second section is attacked as being unconstitutional. The first section is similar to section 6772, Rev. Laws 1910, except that it authorized the investment of sinking funds in U. S. bonds as well as the classes of securities named in section 6772, supra, and without reference to the date of maturity; and validated investments already made in Liberty Bonds. The second section authorized certain officers to sell the securities in which sinking funds had been invested, when thought to be to the best interest of the branch of government owning the securities purchased out of the sinking fund. The contention made is that said section 2 is unconstitutional because the title to the act was insufficient in that it makes no reference to sale or disposition of securities purchased with sinking funds. The title is, "An Act amending section 6772 of the Revised Laws of Oklahoma for 1910, regarding the investment of sinking funds, and declaring an emergency." It is insisted that the title does not conform to section 57, article 5, of the Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

The surety company cites and relies upon State ex rel. Short, Atty. Gen., v. Johnson et al., 90 Okla. 21, 215 Pac. 945. A careful reading of the opinion in that case leads us to conclude that it does not support the contention made here. It is said in the opinion in that case:

"The title to the statute under consideration does not indicate, or, standing alone, does not even intimate, that the body of the act contains a provision whose tendency is to defeat the central purpose of an economic policy of the state."

It cannot be said that the title to the act here under consideration does not "indicate" or "intimate" what the act is about. It seems to show that the amendatory act deals with investments of sinking funds in securities. It seems to us that we need look no further than the canons of construction laid down by the learned justice in the case cited to find authority on which to base the conclusion that the section attacked is constitutional and valid; and we so hold. However, as we read the controlling stat-

utes with reference to investment of sinking funds by the county treasurer, it matters little whether the court should hold section 2 of the act to be constitutional and valid, or to be unconstitutional and void.

The fourth proposition is that section one of the amendatory act (section 8572, Comp. St. 1921) gives a county treasurer discretionary power not only to invest the sinking fund in securities of the classes named in the statute, but also to invest the securities purchased in other securities so long as they are of the kind or class in which he is authorized to invest the sinking fund in the first place.

It seems to us that one of two propositions must be true: (1) The county treasurer has authority to invest the sinking funds held in his hands, in securities of the classes named by the statute, but his authority is limited to the original investment; or (2) the treasurer is not only authorized to invest the sinking funds in his hands in the classes of securities named in the statute, but is also authorized to barter, exchange and traffic in such securities so long as the transactions are in good faith. If one exchange of securities is authorized, there can be no limit to the number of exchanges that may be made, and the only limitation would be .that the exchanges must be for securities of the classes named in the statute, and of equal face value and in good faith. The Legislature must have intended one or the other to be the rule which should control the action of the treasurer in handling and investing the sinking funds in his hands. We will examine the legislative acts and see. if we may, which of the two rules corresponds to the legislative intent. It seems certain that in the absence of statutory authority to invest the sinking funds in his hands, it was the duty of the county treasurer to preserve the sinking funds which came into his official hands intact in money. Before the custodian of the sinking fund could invest such fund in any manner, he must be able to put his finger upon some express statutory provision which would authorize the investment. No such authority seems to have been given by the legislative branch of the state government until in the act of 1910, section 6772, Rev. Laws 1910. That act authorized investment of sinking funds in certain classes of securities, and in 1913 (sec. 8580, Comp. St. 1921) the investment in certain classes of securities is authorized, but the securities to be purchased must carry a date of maturity which would be in advance of the maturity of the

debt which the sinking fund was being accumulated to pay. It is plain from the language used that the authority given is to invest the sinking fund. The condition named seems to negative any idea of either sale or exchange of the securities purchased. It seems plain that the only authority given is to invest the sinking fund in certain securities, that is, under these sections, the officer in charge and control of sinking funds might take such sinking fund money and buy securities, but he must buy securities which matured before the debt to be paid by the sinking fund. Then, no condition will arise where either sale or exchange of such securities will be necessary, and no such sale or exchange is authorized. When such securities are paid off the cash proceeds will be turned back into the sinking fund and become cash on hand instead of securities which are the representatives of so much cash invested. There is no syllable of authority given to sell or exchange such securities as may be purchased. Accepting payment of the securities purchased is in no sense a sale of the securities. All the implied power given the officer is to accept payment of the securities. The debtor always has the right to pay his debt when it matures. The Legislature of 1919 saw fit to amend section 6772, Rev. Laws 1910, by also including U. S. bonds as a class of securities in which the officer in charge of the sinking funds is authorized to invest such funds. Also, the provision of the act of 1913 (sec. 8580, Comp. St. 1921), limiting the purchase to such securities as matured before the maturity of the debt to be paid out of the sinking fund, was left out. Then, the officer in charge of the sinking fund is authorized to buy certain securities, including U. S. bonds, without reference to the date of maturity of such securities. The power granted to the officer is to take money out of the sinking funds in his hands, and buy securities. There is no part of the section which in any way indicates that it was within the legislative intent to grant power to the officer to sell or exchange the securities which he had purchased with the sinking fund. But, since he may buy securities wtihout reference to the date of maturity, a condition might arise where it would be necessary to convert the securities purchased into cash, that is, a sale of the securities purchased might be necessary. It is plain that the Legislature understood that such necessity might arise; and had the Legislature intended that the officer in charge of the sinking fund and the securities purchased with sinking funds, should be

clothed with power to sell or exchange such securities, we naturally would expect to find some intimation of such intent in the act. It is certain from reading the act that no such intent is expressed. It is manifest that section one of the amendatory act expressly clothed the treasurer with all the authority in the matter of handling the sinking fund that the Legislature intended that he should have. The act is plain. It leaves nothing to be guessed at or implied. Beyond express powers given by this section, none existed in the treasurer. There is no part of the act that the treasurer can put his finger upon and say that this part of the act authorizes him to exchange the securities purchased by him out of the county's sinking fund. That being so, there is no grant of such a power. This court will not read into the act a grant of power which it is plain the Legislature never intended to grant.

Section 2 of the amendatory act (section 8573, Comp. St. 1921) removes every doubt as to what the Legislature intended. In the adoption of that section it is certain that the law-making power well understood that a necessity might arise for converting the securities bought by the treasurer out of the sinking funds into cash. In said section the Legislature authorized certain officers to sell such securities when they deemed it to the best interest to do so. The treasurer of the county is not included among those to whom such power is granted; and it becomes certain that the Legislature never intended that the treasurer should be clothed with any such power. From these sections of the statutes involved and controlling in this matter. we conclude that while the treasurer was clothed with a grant of power to invest the sinking funds in his hands; he was never clothed with a grant of power to sell, barter or exchange the securities purchased by him out of the county's sinking fund. The power of the treasurer is limited to the express grant of power contained in section one of the act (section 8572, Comp. St. 1921). Incidentally we shall remark that there seems to be no grant of power to any officer to barter, exchange, or traffic in securities purchased with the sinking fund money, other than to sell the securities when a sale for cash is to the best interest.

From the foregoing we conclude that the first of the above propositions stated must more nearly correspond to the legislative intent, that is, the county treasurer is authorized to buy certain classes of securities

with sinking funds in his hands, but his authority is limited to the original investment. It is well settled that the legislative intent shall control. It follows that when the treasurer invested sinking funds in his hands in U. S. bonds, and thereafter exchanged them for other securities and was unable to produce the securities originally purchased by him, he breached his official duty, and failure to produce such original securities purchased by him out of the sinking funds constituted a breach of a condition of his official bond.

It is insisted here by the defendants, the treasurer and surety on his official bond, that no intentional wrong was done. We are not basing our conclusions upon any purposeful wrongdoing upon the part of the officer or his surety; but we do conclude that there has been committed a breach of official duty by the treasurer in exceeding his statutory grant of power, and that such breach of official duty renders both such treasurer and the surety upon his official bond liable to the county for the value of the securities by him exchanged.

According to the agreed statement of facts the county treasurer of Comanche county had purchased U. S. bonds with sinking funds belonging to his county, and by reason of having exchanged them for Devol city and Wynona city bonds he was unable to account for and turn over to the county the securities originally purchased by him. The law and agreed statement of facts support the judgment of the trial court in favor of the plaintiff and against the defendants for the value of the securities originally purchased by the treasurer.

We recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 518 (1926 Anno.); 29 Cyc. p. 1455. (2) 15 C. J. p. 526. (3) 15 C. J. p. 527. (4) 36 Cyc. p. 1042. (5) 15 C. J. p. 512 (1926 Anno).