BOCKOVEN et al. v. BOARD OF COM'RS OF OKLAHOMA COUNTY.

No. 17895.   Opinion Filed March, 6, 1928.

Rehearing Denied June 19, 1928.

(Syllabus.)

Counties—Illegal Investment by County Treasurer of Sinking Funds in Public Securities Maturing Subsequent to Maturity of Securities for Payment of Which the Sinking Funds Were Collected—Liability on Bond of Treasurer.

By sections 8572 and 8580, C. O. S. 1921, as they existed on December 2, 1920, a county treasurer had the authority to invest sinking funds in his hands in public securities of the classes therein enumerated, provided that the purchased securities matured prior to the maturity of the obligations for the payment of which such funds were collected. And where a purchase was made of any of such securities maturing subsequent to the maturity of the securities for the payment of which the funds so invested were collected, such investment was unauthorized and illegal, and constituted a breach of official duty in the administration of the sinking fund, for which breach the county treasurer and his surety will be civilly liable.

Commissioners' Opinion, Division No. 1.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Action by the Board of Commissioners of Oklahoma County against Arleigh E. Bockoven, former county treasurer, and his surety, United States Fidelity & Guaranty Company, a corporation, for breach of official duty. Judgment for plaintiff, and defendants appeal. Affirmed.

Ames, Lowe & Cochran, for plaintiffs in error.

J. K. Wright, W. F. Smith, and L. W. Harrod, for defendant in error.

TEEHEE, C.   On May 15, 1926, the board of county commissioners of Oklahoma coun-

ty recovered a judgment of $41,850, with interest at 6 per cent. per annum, from December 2, 1920, against Arleigh E. Bockoven, former county treasurer of Oklahoma county, and his bondsman, the United States Fidelity & Guaranty Company, a corporation, under an amended petition filed November 23, 1925.

The petition, in substance, alleged that on December 2, 1920, Bockoven was county treasurer of Oklahoma county, with two fidelity bonds by the United States Fidelity & Guaranty Company, one for $150,000, dated June 27, 1919, and the other for $210,000, dated September 13, 1920, copies of both of which bonds were by exhibit made a part of the petition; that on said date of December 2, 1920, Bockoven, in his official capacity, invested for the account of Oklahoma county its sinking funds in the amount of $41,850 by the purchase of $45,000 par value of certain 6 per cent. waterworks bonds of the town of Pershing, Okla., dated August 1, 1920, and maturing August 1, 1945; that said sinking funds consisted of monies theretofore collected on account of certain bonds of Oklahoma county theretofore issued and maturing on divers dates prior to the maturity date of the bonds purchased; that by virtue of the maturity date of the purchased bonds being subsequent to the maturity dates of the bonds for the payment of which the sinking fund monies were collected, said investment was unauthorized and void; that no part of said funds so invested has been accounted for by Bockoven to his successor in trust as by law required, by reason whereof the conditions of the fidelity bonds were breached; whereupon the county prayed judgment against the said parties principal and surety for the amount of the unauthorized and illegal investment.

Defendants, by separate answer, though identical, admitted the relationship of the parties defendant and the purchase of the bonds alleged, but otherwise denied the material allegations of the petition, and further pleaded settlement of the accounts of the defendant Bockoven in January, 1921, by the board of county commissioners of Oklahoma county upon the succession in trust, which settlement included the purchase of said bonds, and that by reason thereof the county was estopped from maintaining the action. New matter in the answer was by the plaintiff denied.

The cause was tried to the court without the intervention of a jury. The court made findings of fact affirmative of plaintiff's allegations on which the action was predicated, and specifically finding that the sinking fund monies invested were collected for the purpose of retiring certain bonds of the county maturing in the years from 1923 to 1936, and that all of said bonds matured prior to maturity of the purchased bonds, and further specifically found from the evidence that there was no fraud or negligence on the part of the defendant Bockoven in the purchase of the town of Pershing bonds. Upon the findings of fact the court entered its conclusions of law as follows:

"The court concludes that as a matter of law the purchase of the bonds of the town of Pershing made by Bockoven as county treasurer on the 2d day of December, 1920, was illegal, for the reason that the bonds so purchased matured subsequent to the maturity of the bonds to retire which the sinking fund of Oklahoma county in Bockoven's possession as county treasurer was collected, and was being collected, and that under the law in force and effect on said date Bockoven as county treasurer was not authorized to invest sinking fund monies in his hands as county treasurer in bonds which matured subsequent to the maturity of the bonds to retire which the sinking fund was created and was being collected"

—and thereupon entered its judgment against the defendants, to which there was exception, and in due course the cause was lodged in this court for review. Further reference to the parties will hereinafter be made in accordance with their status in the trial court.

Defendants state the case on appeal as follows:

"There is only one question for this court's determination: Was Bockoven, under the law in force and effect on December 2, 1920, authorized to invest sinking fund money in waterworks bonds of the town of Pershing? If the investment was legal, then there is no liability on the part of Bockoven or on the part of the surety on his official bond. The court below held the purchase to be illegal on the sole ground that on the 2nd day of December, 1920, Bockoven, as county treasurer, was not authorized to invest sinking fund monies in his hands as county treasurer in bonds which matured in 1945, when all of the bonds to retire which the sinking fund was being collected matured prior to 1945. If under the law in force on that date Bockoven was authorized to invest sinking fund monies in his hands as county treasurer in municipal bonds, regardless of maturity and regardless of the maturity of the bonds to retire which the sinking fund was being collected, then the judgment of the court below is erroneous and should be reversed."

Thereunder, the effect of defendants' con-

tentions is: That section 8572, C. O. S. 1921, was the controlling provision of law, and as construed by this court in National Surety Co. v. State, 111 Okla. 180, 239 Pac. 257, in that it authorized purchase of bonds regardless of their maturity date, determines the validity of the transaction involved, and though the investment resulted in misfortune to the county by reason of the bankruptcy of the town of Pershing, that, under the construction by this court placed upon the statute, defendants are relieved of all liability, since, as found by the trial court, the investment was made in good faith and without negligence.

Plaintiff's response, in effect, is that the provision of law relied on by defendants must be read and interpreted with section 8580, Id., which authorized purchase of bonds maturing prior to the maturity date for the payment of which the funds were collected, and in the light of sections 26 and 28 of article 10 of the state Constitution, and that, so construed, the judgment of the trial court must be sustained. To this defendants rejoin that section 8580 was repealed by implication by section 8572, and that the sections of the Constitution cited by plaintiff are without application, as they have no reference to the investment of sinking funds.

These conflicting views require judicial ascertainment of the relevant provisions of law and the proper construction thereof.

The provisions of law contained in the statutes at the time of this investment, in point of their date of enactment, were section 1 of chapter 12, S. L. 1913, now designated as section 8580, C. O. S. 1921, and section 1 of chapter 207, S. L. 1919, now designated as section 8572, C. O. S. 1921. For convenience these provisions will hereinafter be referred to under their designated numbers in the Compiled Statutes. Section 8580 then provides as follows:

"The county treasurer, the treasurer of cities, towns, boards of education and township boards, shall invest all sinking fund money now in the respective treasuries or that may hereafter be paid into said treasury, in county warrants, township warrants and school district warrants, school district bonds, township bonds, county bonds, road bonds, and town and city bonds; provided, said bonds shall first be approved by the Attorney General, and shall mature before the maturity of the bonds for which said sinking fund money was collected, and said warrants must have been issued within the limit as fixed and approved by the county excise board, for the fiscal year during which such warrants are issued; provided, further,

such officer or officers shall not pay for such bonds or warrants more than par with accrued interest."

This was a legislative direction to trust officers having charge of certain sinking funds to invest the same in certain enumerated securities recognized by the Legislature as being appropriate in which to invest these trust funds, but limited such investment to those securities which matured prior to the maturity date of the obligations of the purchasing subdivision of the state for the payment of which at their maturity such funds were collected. This provision appears to be a special statute controlling certain trust officers and within fixed limits. Thereunder, there can be no doubt that an officer therein designated had no authority to invest sinking funds in their hands in securities of the character involved in the cause at bar.

Section 8572, which was amendatory of section 6772, R. L. 1910, wherein was incorporated the relevant provision of section 7233, R. L. 1910, in respect to public building warrants, then provided as follows:

"The treasurer having charge of any sinking fund of the state, or of any county, city, town, township, school district or any other municipality thereof, may invest such sinking fund in United States bonds, the bonds or warrants of the state or any county, city, town, township, school district or any other municipality thereof; or in any public building warrants maturing prior to the date of the bonded indebtedness and for the payment of which any such sinking fund is created; provided that none of such securities as herein enumerated shall be purchased for more than par and accrued interest; or the proper officers may buy and cancel the outstanding bonds of the state, county, city, town, township, school district, or other municipalities which they represent, whenever the same may be purchased at or below par and accrued interest. All investments by any county, city, town, township, school district or other municipalities of the state in Liberty Bonds made prior to this act are hereby legalized."

Other than including the bonds of the United States government in the list of securities permitted to be purchased, the amendment effected no change in the original law existent at the time of the enactment of section 8580. Then, as well as upon the amendment, this provision clothed all trust officers with discretionary authority to invest sinking funds in their hands in the classes of securities therein enumerated, which, in addition to the securities enumerated in section 8580, also originally included state securities as being possessed of investment character. Section 8572 thus appears

to be a general statute and has application to all trust officers having charge of sinking funds.

By reason of its general application, defendants contend that it was a substitute for all subsisting provisions of law upon the subject, and for that reason it, in the absence of an express repeal, by implication repealed section 8580, supra, and thereby removed the limitation upon the purchase of securities therein enumerated, in that the investing officer was permitted to purchase such securities irrespective of their maturity, except as to public building warrants, which continued under the restrictions that had been imposed by the original law. For this reason defendants make the point that the securities involved in this litigation constituted an authorized and legal investment.

In support of their point of repeal by implication, defendants rely on the rule that:

"Whilst repeals by implication are as a rule not favored in law, yet, when it is clear that it was the intention that a certain complete act should be substituted for all pre-existing statutes on the subject, it is the duty of the courts to so hold."

In this they cite Erwin v. Wheeler, 31 Okla. 331. 120 Pac. 1098, and many other cases by this court to like effect.

It is to be noted that the two quoted provisions of law, if subsisting at the time of the purchase of the bonds involved, do not conflict unless it be said that such conflict arises by virtue of the omission of the language in the later act contained in the prior act in that all securities purchased must mature prior to the original obligations. It is true that both provisions deal with the same subject-matter, but not to the extent of that completeness which would call into application, in our view, the rule relied on by defendants. The one act, section 8580, in its practical operation required investment in certain securities where such funds had not theretofore already been invested in state securities as was permissible under section 8572 prior to and upon amendment, and the other act, section 8572, authorized all trust officers in their discretion to invest in the classes of securities therein designated. In other words, as already indicated, the one was a special act and the other a general act. This view is in harmony with the legislative view of these provisions, as the Legislature, it properly may be observed, by section 1 of chapter 176. S. L. 1923, expressly amended section 8572 by embodying therein further limitation upon the

power of such investment of sinking fund monies, and by section 1 of chapter 56, S. L. 1927, expressly amended section 8580 by adding to the list of securities there enumerated state bonds and bonds of the United States government. These later amendatory acts were an express recognition by the Legislature of the co-existence of these two provisions of law at the time of the transaction involved, and clearly show that it was the intention of the Legislature at the time of their enactment that they should be construed together and given effect as a whole.

In Cochran v. Sullivan, 94 Okla. 23, 220 Pac. 870, the rule is laid down that:

"Where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, the duty of the court, no purpose to repeal being clearly expressed or indicated, is, if possible, to give effect to both."

There are many other like cases by this court, citation of which is unnecessary, as this rule is elementary and well established as a canon of statutory construction. We reach the conclusion, therefore, that sections 8572 and 8580, C. O. S. 1921, as they existed on December 2, 1920, must be construed together and given effect as a whole, and thus construed, were the controlling statutes on that date, and authorized the investment of sinking funds in the hands of the county treasurer in any of the securities therein enumerated within the limitations therein fixed.

We are not unmindful that this conclusion raises a conflict with certain language employed by this court in National Surety Co. v. State, supra, that supports the contention of defendants and by them relied on, to the effect that a county treasurer, under section 8572, as then subsisting, was authorized to purchase securities with sinking funds regardless of their maturity. Considering that section alone, and even treating it as a repeal of section 8580, it would appear that the statute is susceptible of the construction that such investment was authorized in that manner except as to public building warrants. To follow that view would clearly result in nullification of the law, as that would not be in harmony with the policy of the state in respect to the purpose of sinking funds as expressly declared by sections 26 and 27 of article 10 of the state Constitution. These relate to incurring of indebtedness in excess of the maximum legal tax levy otherwise fixed, which in practical application is evidenced by the issuance of bonds. It is there specif-

ically provided that, before or at the time of creation of such indebtedness, provision shall be made "for the collection of an annual tax, in addition to other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

These provisions of the fundamental law have been declared to be self-executing (O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla 738, 124 Pac. 19, and State ex rel. Edwards v. Miller, 21 Okla. 448, 96 Pac. 747), and thus are complete declarations of the state policy of the matters comprehended therein. The policy of the state, therefore, in respect to sinking funds levied and collected as here, is that they are impressed with a trust of the highest character, which must be maintained inviolate, and that the funds must be available for payment of the respective securities at their maturity wherefor they were collected. Thereunder it is plain that legislative direction in the administration of these trust funds must not be violative of the policy of the state in relation thereto as thus fixed by constitutional mandate.

By virtue of these constitutional provisions, said section 8572, as existing at the time of the investment under consideration, must be interpreted in conformity therewith, as well as with section 8580, for we must impute to the Legislature knowledge of their limitations in their power of legislative direction in respect to the use of these funds, and that it did not intend to pass an unconstitutional act, which plainly would be the case if the construction urged by defendants were followed. Granada County Superviser v. Brogdan, 112 U. S. 261, 28 L. Ed. 704.

Upon examination of the case thus relied on, it will be found that the view expressed by the language with which defendants fortify their defense in this phase of the cause at bar was not necessary to a disposition of the proposition in that case involved, and for that reason it was dictum. The language referred to, particularized by us by emphasis, appear in the body of the opinion in the following excerpt at page 183 of the official state report, to wit:

"The first section is similar to section 6772, Rev. Laws 1910, except that it authorized the investment of sinking funds in U. S. bonds as well as the classes of securities named in section 6772, supra, **and** without reference to the date of maturity. * * *"

And at page 184, to wit:

"The Legislature of 1919 saw fit to amend section 6772, Rev. Laws 1910, by also including U. S. bonds as a class of securities in which the officer in charge of the sinking funds is authorized to invest such funds. **Also, the provision of the act of 1913 (sec. 8580, Comp. St. 1921), limiting the purchase to such securities as matured before the maturity of the debt to be paid out of the sinking fund, was left out.** Then, the officer in charge of the sinking fund is authorized to buy certain securities, including U. S. bonds, **without reference to the date of maturity of such securities.** The power granted to the officer is to take money out of the sinking funds in his hands, and buy securities. There is no part of the section which in any way indicates that it was within the legislative intent to grant power to the officer to sell or exchange the securities which he had purchased with the sinking fund. But, **since he may buy securities without reference to the date of maturity,** a condition might arise where it would be necessary to convert the securities purchased into cash. * * *"

The chief point at issue was the authority of a county treasurer to exchange securities purchased with sinking funds for other securities, and not the purchase of securities regardless of their maturity; hence, the view thus expressed thereupon cannot be considered as an adjudication of the question here at issue as contended by defendants.

It therefore necessarily follows that by sections 8572 and 8580, C. O. S. 1921, as they existed on December 2, 1920, a county treasurer had the authority to invest sinking funds in his hands in public securities of the classes therein enumerated, provided that the purchased securities matured prior to the maturity of the obligations for the payment of which such funds were collected. And where a purchase was made of any of such securities maturing subsequent to the maturity of the securities for the payment of which the funds so invested were collected, as here, such investment was unauthorized and illegal, and constituted a breach of official duty in the administration of the sinking fund, for which breach the county treasurer and his surety will be civilly liable. The judgment of the district court is therefore affirmed.

BENNETT, REID, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 15 C. J. p. 511, §179; p. 519, §196.