## SCHOOL DIST. NO. 4, MARSHALL COUNTY, v. STANLEY, Co. Treas., et al.

No. 18387. Opinion Filed March 19, 1929.

Hatchett & Ferguson, for plaintiff in error.

F. J. Kim and Paul Buford, for defendants in error.

RILEY, J. Herein is presented an appeal from a judgment below in favor of plaintiff below, plaintiff in error, independent school district No. 4, Marshall county, Okla., and against defendant below, A. F. Stanley, county treasurer of Marshall county, Okla., and the board of county commissioners, of Marshall county, Okla.

The facts are agreed upon:

"Agreed Statement of Facts. School District No. 4, v. County Treasurer.

"1. It is agreed that school district No. 4 became an independent district sometime in July, 1921.

"2. That after the board was organized, J. T. Crane was elected treasurer.

"3. That on July 30, 1921, Marshall county delivered to Crane, as such treasurer, all moneys belonging to said district, which previous thereto had been a common school district, consisting of $6,685.52 in cash and $6,000 of the city of Jennings bond; that these bonds had been acquired by the county treasurer while said district was a common school district, from the sinking funds of said district.

"4. That on May 7, 1923, J. T. Crane, as treasurer of said district, sold the said $6,000 Jennings bonds to A. F. Stanley, as county treasurer of this county, and received therefor a check payable to the First National Bank of Woodville, of which said Crane was cashier and in which he kept the said school funds, for the sum of $6,000, the county treasurer purchasing said bonds as an investment from the sinking funds of the district.

"5. That said J. T. Crane received said check and that it is impossible to determine what was first done therewith, unless the said Crane should appear as a witness, but that said check bears the following indorsements:

" 'Pay to the order of any bank or banker prior indorsements guaranteed. First Natl. Bk. Woodville, Okla.'

" 'Pay to the order of any bank, banker or trust company all prior indorsements guaranteed May 9, 1923. Citizens State Bank, Denison, Texas.'

" 'Pay to the order of any bank, banker or trustee prior indorsements guaranteed, May 10, 1923, Republic National Bank, Dallas, Texas.'

" 'Pay to the order of any bank or banker prior indorsements guaranteed May 10, 1923, Federal Reserve Bank of Dallas.'

"—said check being finally paid by the First National Bank of Madill, on which it was drawn, May 11, 1923. What became of the funds of said check from May 11, until May 29, is unknown, but on the 29th day of May, 1923, $5,700 thereof was deposited to the credit of J. T. Crane, treasurer district No. 4, in the First National Bank of Woodville, Okla., and the deposit slip therefor shows on its face that it was the proceeds of the sale of Jennings bonds, and no credit has been found for the remaining $300 of said check.

"6. It is further agreed that on the 31st day of December, 1923, the account of J. T. Crane, as treasurer of said district, was finally audited at the direction of said board and he was found short with said district in the sum of approximate $14,585.33, said audit having been made by W. T. Miller, deputy State Examiner and Inspector of Oklahoma, and said Miller, if present, would testify shbject to objections from either party, that he ascertained the condition of said account as shown by his audit, which is here referred to and made a part hereof, and which may be offered in evidence in whole or in part by either party, subject to such objections as either party may make.

"7. It is furher agreed by the parties hereto that the board of education of school district No. 4, aside from said Crane, had no notice of any irregularity in the account of its treasurer, Crane, or of any defalcation, embezzlement, etc., of any funds of said district, until shortly after said Crane ceased to be treasurer, which was shortly after December 31, 1923, and that said board, aside from said Crane, had no knowledge or notice of the sale of said Jennings bonds until after Crane ceased to be its treasurer, and did not authorize the sale thereof.

"8. It is further agreed that the bonds in controversy consisted of six bonds, numbered 1 to 6, inclusive, of the city of Jennings, Okla., and are now in possession of the defendant as treasurer, said bonds bearing 6 per cent. interest, interest payable March 1st of each year; that at the time of the sale of said bonds interest has accrued thereon from March 1st to May 7th, that the interest, $180 at each interest paying period, has since been collected by the county treasurer.

"Hatchett & Ferguson, Attorneys for Plaintiff.
"F. J. Kim, Attorney for Defendant."

The trial court entered its judgment in favor of plaintiff and against defendant for the sum of $367, with interest at 6 per cent. from May 7, 1923, the same being the difference in the par value of the bonds with the interest accrued and the amount paid said Crane by defendant Stanley, county treasurer.

The auditor's report shows embezzlements on the part of Crane from the school district represented by him as follows:

March  8, 1923 _____$4,237.66
 "    14, 1923 _____ 1,197.10
 "    22, 1923 _____ 5,875.94

The entry of item No. 4, is as follows:

"On May 29, 1923, appears a credit on ledger account of J. T. Crane, treasurer, district No. 4, books of First National Bank,

16

Woodville, of $5,700, and on deposit ticket is notation 'bonds sold.' District No. 4, owned $6,000 city of Jennings bonds and I assume these were the bonds sold. I am advised by the school board that Mr. Crane had no authority to sell these bonds, and I therefore charge his account $300.00."

| | |
|---|---|
| May 29, 1923 | $ 1,502.54 |
| Aug. 6, 1923 | 932.50 |
| Aug. 6, 1923 | 539.50 |
| Total | $14,585.33 |

Crane as such school treasurer was an appointed official—he was not a member of the school board. Section 10386, O. O. S. 1921. He had no power or authority to sell the bonds, for that authority, with limitations, was vested in the school board. Section 8573, C. O. S. 1921; Natl. Surety Co. v. State, 111 Okla. 180, 239 Pac. 257; Natl. Surety Co. v. State, 111 Okla. 185, 239 Pac. 262; State v. McCurdy, 115 Okla. 111, 241 Pac. 817. In the case first cited it was held:

"The treasurer of the county is not included among those to whom such power is granted, and it becomes certain that the Legislature must intend that the treasurer should be clothed with only such power. * * * The power of the treasurer is limited to the express grant of power contained in section 1 of the act (sec. 8572, C. O. S. 1921)."

This is an action to recover specific personal property which clearly belongs to the plaintiff school district. Whosoever deals with a municipality does so with knowledge of its and its agents' authority. The school district is entitled to the return of its bonds, for title never passed to the county. The agreed fact is that the school board "did not authorize the sale thereof."

The county contends that by reason of equity, set up in its answer and joined under our Code provisions, restitution of the bonds ought not be decreed except on condition of a return of the $5,700 and interest thereon from the date, May 7, 1923, by reason of the fact that on May 29, 1923, the defaulting treasurer, Crane, deposited to his credit, as treasurer, in the First National Bank of Woodville $5,700, with deposit slip marked, "proceeds of Jennings bonds." Yet we observe Crane apparently embezzled $4,237.66 on March 8th, prior; again, on March 14th, he apparently embezzled $1,197.10; again, on March 22nd, he apparently embezzled $5.875.94, and on the very day of the credit of $5.700 proceeds he apparently embezzled $1,502.54, altogether making a total defalcation in his account with his bank (he being cashier) of $12,813.24, up to and including May 29, 1923. Thereafter he apparently embezzled $1,472 from the account. In effect, if not in fact, he embezzled the bonds and for consideration of $6,000 he delivered them to the county treasurer. The consideration was paid him by check on May 7, 1923. Crane promptly embezzled that consideration, for he cashed the check and it was not until May 29, 1923, that he made deposit of $5,700, and marked the same "proceeds of Jennings bonds." His obligation was to make immediate deposit, under section 10386, C. O. S. 1921, contemplating the faithful performance of his duties. We might add value of the bonds to the total embezzled to the date of May 29th, and bring the total to $18,813.24, on that date.

The county relies upon Antrim Lbr. Co. v. Okla. State Bank, 65 Okla. 26, 162 Pac. 723, wherein one Williams was agent of the lumber company. He embezzled funds, he procured $800 from the bank and used it for the benefit of the lumber company, giving the bank an unauthorized note for the funds. The bank brought suit on the note. The lumber company repudiated the note, but sought to retain the benefits of the proceeds thereof, and this court held the defendant could not retain the benefits of the transaction and at the same time repudiate the act of its agent in executing the note.

We hold such cases are to be distinguished from the action at bar. First, the party sought to be charged is a municipal subdivision; a higher degree of care is charged to those dealing with its agents than applies to individuals, as well as other municipal corporations. Where an unauthorized agent of another, such as Crane, extracted money from the county and from the possession of the county treasurer, unlawfully as herein, the county treasurer, his bondsmen, and the unauthorized agent, Crane, would be liable therefor, but before the principal of Crane can be charged, it being a municipal subdivision, it must be most clear and positive that it received a benefit, free and clear of any detriment. Was the school district the recipient of clear money had and received out of the transaction? On the very day of the deposit $1,502.54 was unlawfully embezzled out of the account of the school district. Probably that was a part of the very money deposited, for the law will presume that the defaulter used those funds which he had the best right to use. Again, the Antrim Case is distinguished from the case at bar by reason of the fact that the embezzlement and sale of the bonds by Crane was violative of a positive statute and the

act absolutely void. It constituted violation of criminal statutes; the act in no event could be ratified.

"Where a contract is void on the ground that it involves the commission or compounding of a crime, there can be no confirmation or ratification of same without it being affected with the original taint. Any subsequent ratification of same between the same parties is illegal." Stannard v. Sampson, 23 Okla. 13, 99 Pac. 796.

But where the act is one of conscience, one of fraud between individuals, as in the Antrim Case, and not an offense against the state or organized society, that question is not presented in this record.

Again we are met with the question as to whether the funds deposited can be identified and traced, so as to impress a trust thereon. There is a mere memorandum by Crane, upon a deposit slip, that the $5,700 deposited is "proceeds of Jennings bonds." These bonds were embezzled May 7, 1923, when Crane received a check from defendant Stanley in the sum of $6,000 therefor. This check was deposited, not to Crane's credit as treasurer, but either to himself individually or to the credit of some other on the very next day. The check reached Dallas on May 10th, and was paid by the Madill bank May 11th. Therefore, we say that Crane not only embezzled the bonds, but likewise embezzled the proceeds thereof, the $6,000, so paid him. Twenty-two days later, from some unknown source (unknown save his memo), perhaps from the school district fund itself, for he embezzled $1,502.54 that day, and he had theretofore taken many thousands of dollars, in excess of the amount, he then credited and deposited $5,700 to himself as treasurer of the school district. Is it not reasonable that Crane was repaying a portion of the very funds of the school district which he had theretofore embezzled? We so hold—such was that public officer's duty. We must indulge the presumption that occasionally he did his duty. The identical funds cannot with certainly be traced; consequently, no trust for the benefit of the county treasurer is impressed upon the assets of the school district. In State v. Foster (Wyo.) 38 P. 926, it is held:

"In following trust funds they must first be traced to the estate of the trustee or quasi trustee, and the corpus of the fund must be found. It must be in esse, in some form, or it cannot be identified. Where the trust moneys are mingled with those of the trustee, the trust may be impressed upon such fund or property with which it is mingled; but, if it appears that the trust moneys are dissipated or lost, there is no fund to impress with the trust, and the sole remedy of the beneficiary is a proceeding against the trustee, personally."

Also it is said in the opinion:

"The courts generally have gone as far as it seems possible in holding that the presumption always is that the trustee has used his own funds in his business operations; and, if there be any money on hand at the time the trust is sought to be enforced, that presumption controls. So the trustee who has blended the trust moneys with his own is not permitted to say that he has used trust moneys when he had a right to use his own. This appears to be one of the principles that governed the decision in the famous case of Knatchbull v. Hallett, 13 Ch. Div. 696, which overruled some prior English decisions. It is to the effect that if a person who holds money as a trustee, or in a fiduciary character, pays it to his account or at his banker's, and mixes it with his own money, and afterwards draws out sums by checks in the ordinary manner, the drawer must be taken to have drawn out his own moneys in preference to the trust money."

See, also, Rabon v. Cascade Bank (Mont.) 84 Pac. 72, and 39 Cyc. 541, where in the latter citation it is pointed out that requisite to such equitable relief the fund be "distinctly identified," otherwise relief must be "by some other remedy, as by proceeding as a creditor of the trustee"; further, that "the means of ascertaining and identifying a trust fund fails, where the trust estate consists of money, or is converted into money, and is mixed and confounded by the trustee in a general mass," for that "money, as such, has no earmark by which, when once mingled in mass, it can be traced," and that, "at least as against innocent third persons, the money must be distinctly traced" and clearly proved to have been so invested.

We conclude that the conveyance of the bonds was illegal and void and in violation of positive criminal statutes. The act of conveyance was not subject to ratification. Title to the bonds never passed out of the school district. Judgment for the recovery of the specific personal property should be awarded the plaintiff in error. There is no obligation in equity or good conscience established to impose upon the plaintiff in error the duty to repay any sum to the defendant in error.

Crane continued his embezzlements from the school district of which he was the treasurer, after the deposit of the $5,700. By the payment of his debt (his former embezzlement), presumably he was enabled to

embezzle more money from the school district; consequently by reason of the deposit, when taken as a whole, no benefit inured to the school district from all the defaulter's transactions. Crane never credited a dollar to the account of the school district, even approaching the amount which was in his hands for that purpose and for which the school district was entitled to credit. As was said in Newell v. Hadley (Mass.) 29 L. R. A. (N. S.) 908, 92 N. E. 507, "no benefit can be said to inure to a defendant because one of its debts was paid in the course of a series of thefts which the defaulter was enabled to continue by the payment in question." Craft v. S. Boston Ry. Co., 5 L. R. A. 641.

The judgment of the trial court is reversed and remanded, with directions to enter judgment in favor of plaintiff below in the manner and form above indicated.

LESTER, V. C. J., and HEFNER, HUNT, SWINDALL, CULLISON, and ANDREWS, JJ., concur.

CLARK, J., not participating.