### SANDERS et al. v. BOARD OF COM'RS OF DELAWARE COUNTY.

No. 21438. Opinion Filed Oct. 25, 1932.

the sinking fund of said county. The action originated in the district court of Delaware county, but the venue was changed to and trial had in the district court of Rogers county.

The petition set out the election and qualification of defendant Sanders as county treasurer, his term of office, etc., the execution of his official bond by defendant bonding company and its approval by the board of county commissioners. It then alleged that on or about September 29, 1922, within his said term of office, defendant Sanders, as such county treasurer, had in his possession and under his control the bonds mentioned, of the total face value of $37,500, with accrued interest thereon at that date in the sum of $3,150. The petition than alleges:

"That by the carelessness, negligence, and unfaithfulness of the said defendant W. M. Sanders, he allowed and permitted the above described bonds in the above stated amount, $37,500, with interest as set out in paragraph four herein, to be purloined, sto'en and carried away from his care and custody as county treasurer of Delaware county, Okla., that said defendant have repeatedly been called upon to produce the above and herein described bonds and he at all times have failed and refused to do so at all times stating that they were not in his possession, and that the def. W. M. Sanders went out of office July 1, 1925, and refused, neglected and failed to turn over to his duly elected qualified successor in office, F. M. Brewster, county treasurer.

"Plaintiff alleges that by reason of the above-described bonds having been placed in the hands and under the control of the defendant W. M. Sanders, county treasurer of Delaware county, he being the proper custodian of said bonds in the sum of $37,-500, with accrued interest to the 1st day of September, 1923, in the further sum of $3.150, and by reason of the failure of the said W. M. Sanders to make proper accounting to the plaintiff board of county commissioners when called upon to do so by said plaintiff, that the conditions of the bond of the said W. M. Sanders, treasurer of Delaware county, were broken, and the plaintiff states that the defendant W. M. Sanders and the defendant Massachusetts Bonding & Insurance Company became indebted to and liable to pay the plaintiff herein the sum of $40,650, with interest on the sum of $37,500, from the 1st day of September, 1923, at the rate of 6% per annum until paid: that demand for payment has been made and payment refused and that there is now justly due and payable to the plaintiff from the defendants the said sum of $40.650, with interest on the

Gordon J. Quilter and James W. Cosgrove, for plaintiffs in error.

L. Keith Smith, for defendant in error.

RILEY, J. The board of county commissioners of Delaware county sued William Sanders, former county treasurer of said county, and the Massachusetts Bonding & Insurance Company, as surety on his official bond, to recover for the value of $15,-000 of the bonds of the city of Oilton, and $20,000, face value of the city of Wilson bonds, and $2,500, face value of the town of Grove bonds, all bearing 6 per cent. interest, which the county treasurer had theretofore purchased as an investment of

sum of $37,500, at 6% per annum from September 1, 1923, until paid."

Defendants answered by general denial.

A jury was impaneled and the evidence of plaintiff was presented. Defendants demurred to plaintiff's evidence, and the demurrer being overruled, they presented their evidence, at the close of which plaintiff and defendants each moved the court for a directed verdict, whereupon the court having indicated that he would direct a verdict for plaintiff, it was agreed in open court that the court would render such verdict as he would direct the jury to render. Judgment was entered accordingly for plaintiff for the full face value of the Wilson and Oilton bonds with accrued interest, and defendants appeal.

There are numerous assignments of error, six of which are presented together. They go to the question of sufficiency of the evidence to sustain the findings and judgment. It is contended thereunder that the court erred in overruling the separate demurrers of the defendants to plaintiff's evidence, and in denying their separate motions for directed verdicts. At the trial it was agreed as follows:

"Mr. Cosgrove: The defendant admits that the defendant W. M. Sanders was the duly elected, qualified, and acting county treasurer of Delaware county, Okla., for two and a quarter terms, that is, beginning on or about December 6, 1920 and ending July 1, 1925. The Court: All right. Mr. Cosgrove: The defendants also agree that the defendant Sanders received from his predecessor in office the 20 city of Wilson bonds and the 15 town of Oilton bonds, as described in the petition as amended, and that when his final term ended July 1, 1925, the defendant Sanders did not deliver or surrender those bonds to his successor. Mr. Goad: And never had done so before that time. Mr. Cosgrove: He did not then, nor at any other time."

There was no direct evidence that defendant Sanders had not in fact paid to his successor in office the value of the bonds in money.

Defendants contend that: "It was essential to prove nonaccounting, refusal or failure to pay as it was to prove nonsurrender of the bonds." And that "plaintiff just went half far enough to prove breach of duty and of official bond."

National Surety Co. v. State, for the Use and Benefit of Bd. of Com'rs of Comanche County, 111 Okla. 180, 239 P. 257, is relied upon by defendants to support this contention. It was there held:

"Where, in a case so prosecuted, it is, in effect, alleged that the county treasurer had in his official hands securities purchased with sinking funds belonging to his county, and that such treasurer failed and refused to surrender such securities to his successor in office or account for them in money, the petition states a cause of action in favor of the plaintiff and against the treasurer and the surety on his official bond for the face value of such securities and accrued interest thereon, according to the terms of such securities."

From this it is argued that if it is essential to allege both nonsurrender of the securities to his successor and nonpayment of value in money, it is essential to prove both. With this statement we agree. But we do not agree that it is essential to allege nonpayment of value in money in order to state a cause of action. The petition upon which the case referred to was tried did not so allege. There the cause was tried upon an agreed statement of facts. The agreed statement of facts did not mention nonpayment of the value in money. In that case the plaintiff's cause of action was based upon the fact that a county treasurer had traded certain United States bonds in which it had invested money belonging to the sinking fund for certain municipal bonds and by reason thereof could not turn over the United States bonds to his successor. It was held that the county treasurer had exceeded his authority, which it was said "is limited to the original investment." In the body of the opinion it is said:

"It follows that when the treasurer invested sinking funds in his hands in U. S. bonds, and thereafter exchanged them for other securities and was unable to produce the securities originally purchased by him, he breached his official duty, and failure to produce such original securities purchased by him out of the sinking funds constituted a breach of a condition of his official bond."

Therefore all that was necessary to allege in order to charge a breach of condition of his official bond by the county treasurer was that the bonds belonging to the county had come into his possession as county treasurer, and that he failed to deliver same to his successor at the expiration of his term of office. Of course, if he had paid to the county the value of said bonds with accrued interest, plaintiff could not have recovered. Such payment would be a defense, and as defensive matter should have been pleaded and proved like any other defense. It not being necessary to

allege nonpayment of value in money in order to show a breach of the official bond, failure to prove such nonpayment was not fatal. If payment had been made, it was for the defense to allege and prove same.

It is next contended, under assignments 8, 9, and 15, that inasmuch as the petition alleges that it was by carelessness, negligence, and unfaithfulness that the defendant Sanders permitted the bonds to be purloined, stolen, and carried away from his care and custody as county treasurer, the court erred in refusing to submit the case to the jury on the issue of negligence. In support of this contention, Board of Com'rs of Grant County v. Soucek, 128 Okla. 151, 261 P. 947 is cited. It was there held:

"Under section 5727, C. O. S. 1921, directing the board of county commissioners to designate the depository for the deposit of the county's funds coming into the hands of the county treasury and requiring such depository to furnish bond or other security, the position of the county treasurer is similar to that of a bailee for hire, and he is only required to exercise good faith and reasonable skill and diligence in the care and protection of the county's funds intrusted to him."

In effect the decision in that case held that by the enactment of the County Depository Act, S. L. 1905, ch. 11, art. 11, p. 180, sec. 1540, R. L. 1910, as amended by S. L. 1919, ch. 284, p. 405, the rule that had theretofore been applied as to public funds in the hands of the county treasurer was changed.

In Van Trees v. Territory, 7 Okla. 353, 54 P. 495, decided in February, 1898, and before the enactment of the County Depository Act, it was held:

"In an action on an official bond of a county treasurer, the fact that the moneys were deposited in a solvent banking institution, which thereafter failed, resulting in the loss of the funds, without any fault or negligence on the part of the treasurer, constitutes no defense to said action."

Thereby the rule was adopted in this state that with reference to public funds in the hands of the county treasurer, such treasurer is held strictly accountable therefor, or, in effect, an insurer of their safety and accountable therefor without regard to diligence or negligence in the manner of his handling the same. In later cases, State ex rel. Adair v. McCloud, 64 Okla. 126, 166 P. 1065, and Board of Com'rs v. Soucek, supra, it is held that by reason of the provisions of the County Depository Act, the absolute control of county funds being taken from the county treasurer, and the requirement that he deposit the money belonging to the county

in banks not of his choosing, but such as may be designated by the board of county commissioners, the county treasurer is not held strictly to account therefor where he complies with the provisions of the Depository Act.

But these cases all deal with money in the hands of the county treasurer. Cases dealing with securities held by the county treasurer for the benefit of the sinking fund of the county are: National Surety Co. v. State, supra; National Surety Co. v. State ex rel. Richards, 111 Okla. 185, 239 P. 262, and State for the Use of the Board of Co. Com'rs of Osage County, 115 Okla. 111, 241 P. 816. These are cases where the county treasurer had in excess of his authority intentionally parted with the possession of the securities involved and had intentionally traded same for other bonds. It was there held that good faith, diligence, etc., were no defense, and failure to turn over to his successor in office the particular bonds which the law permitted him to acquire created liability on his part and on the part of the sureties on his official bond. Here we are dealing with a different situation. In the instant case the evidence in substance shows that defendant Sanders secured the bonds in question from his predecessor and they were kept by him in a vault provided by the board of county commissioners which was also used by the county treasurer. The vault had two doors, the outer door was quite heavy and had at one time been provided with a combination lock. The inner door was lighter and of steel and was provided with lock and key. Within the vault there was what is called a "strong box," in which the bonds were kept. This box was also provided with a lock and key. The combination lock on the outer door had been out of order for some three or four years. A hole had been drilled through the door through which a lead pencil could be inserted by means of which the latch could be raised and the outer door could be opened. This condition has existed for a number of years. On the night of September 29, 1922, the outer door of the vault had been opened, the lock of the inner door was sprung or forced and the door was opened and the bonds in question were stolen. Just how the "strong box" was opened does not appear.

By subdivision 4, section 5793, C. O. S. 1921 [O. S. 1931, sec. 7660,] the board of county commissioners is given power to furnish a fire-proof vault sufficient in which to keep all the books, records, vouchers, and papers pertaining to the business of the county. But this does not make it the duty of the board of county commissioners

to provide a burglar proof vault or safe in which the county treasurer may keep bonds and other securities belonging to the county, nor make it the duty of the county treasurer to keep such bonds in such fireproof vault as the county commissioners may furnish.

The question presented, then, under such circumstances, is, Is the county treasurer to be held to that strict accountability as to bonds and other securities coming into his hands as county treasurer as he was as to money before the enactment of the depository law, or is he to be held to account therefor under the theory that he is a bailee for hire and held liable for the loss of such securities only where he has been guilty of negligence in the care of such securities? In the Van Trees Case, supra, it is pointed out that the great weight of authority is that where the statute imposes a duty to pay over public money received and held as such and no condition limiting the obligation is found in the statute, the obligation imposed upon and assumed by the officer and his surety will be deemed absolute, and the plea that the money has been lost or stolen without any fault or negligence on his part does not constitute a valid defense. At that time such rule had been adopted in some 21 states. The cases being cited in the Van Trees Case, supra, it is unnecessary to again cite them here. It is sufficient to say that our attention is not called to any case where the rule has been changed in this state or any of the other states there mentioned. Six states appear to have held to the other rule.

By law the county treasurer is made the custodian of the money belonging to the county sinking fund. Section 8572, C. O. S. 1921, in effect at the date of the transaction here involved, authorized the county treasurer to invest such sinking fund in such securities as are therein mentioned. He then becomes the custodian of the securities thus acquired. The law required that the defendant Sanders turn over to his successor in office all securities coming into his possession by virtue of his office and not lawfully disposed of under the provisions of section 8573, C. O. S. 1921 [O. S. 1931, sec. 5918]. The condition of the official bond sued upon was "that if the said William Sanders shall well and faithfully perform all of the duties of his said office, this obligation to be void, otherwise to remain in full force and effect." As applied to securities so coming into the hands of the county treasurer, our attention is called to no statute, and we have found none, limiting the obligation of the county treasurer with respect thereto. The obligation imposed by law and assumed by him and his sureties will still be deemed to be absolute and the plea that the bonds in question had been lost or stolen without any negligence or carelessness on the part of the county treasurer is no valid defense. There was therefore no error in refusing to submit the case to the jury on the question of negligence.

Under assignment 10, defendants contend that the judgment is excessive in that interest was allowed at 6 per cent. per annum (the rate of interest borne by the bonds) from September 29, 1922, the date of their loss. Defendants contend that, as no demand for payment was made on the surety, interest should not be allowed as against such surety until January 7, 1924, the date the suit was filed.

There would be merit in this contention if the action were for the loss of money instead of interest-bearing securities. In such case the general rule is that, "as against sureties, interest is allowed only from the date of notice to date of the breach, or from the date of demand or time to make good such breach, and where no demand is made it is allowed only from the date the action is commenced." 46 C. J. 1071.

But where the breach of official bond consists of loss or failure to turn over to his successor interest-bearing securities, the rule in this state seems to fix the liability at the face value of such securities and accrued interest according to the terms of such securities. State for the Use of Com'rs of Osage Co. v. McCurdy, 115 Okla. 111, 241 P. 816; Nat. Surety Co. v. State, for the Benefit of Comanche County, 111 Okla. 180, 239 P. 257; Nat. Surety Co. v. State ex rel. Richards, 111 Okla. 185, 239 P. 262. In the latter case judgment was entered in the trial court for the face of the bonds disposed of with interest according to the terms of the several kinds of bonds disposed of. The rate of interest borne by said U. S. bonds there involved was less than 6 per cent., viz., 3¾ per cent. and 4 3/4 per cent. The judgment in the lower court called for interest on the whole at 6 per cent. from the date of judgment. On appeal the interest was reduced to conform to the rate provided in the several classes of bonds involved. Interest, however, appears to have been allowed on interest accrued at the date of the judgment. The correct rule we think was that followed by the trial court in the instant case, viz., interest at the rate provided in the bonds.

It is next contended that the trial court erred in admitting in evidence the invest-

ment record kept in the office of the county treasurer.

At the trial it was urged that, defendants having admitted the possession of the bonds in question and the failure to turn same over to a successor, the investment record was incompetent for any purpose. The plaintiff insisted that it was competent because a public record, and material in that it showed that the bonds there designated were payable to the bearer and therefore negotiable. The record was objected to for this purpose as not being the best evidence. Conceding that the evidence offered was not the best evidence, we are unable to agree with the defendants that they were prejudiced by the introduction of the investment record. In this kind of case it would make no difference whether the bonds were negotiable or not. The breach of the official bond was complete when the county treasurer failed to turn the bonds over to his successor in office. It has been so held in a number of cases. The cause of action would be the same. The admission of incompetent evidence upon an immaterial issue is not necessarily prejudicial, and in this could not have prejudiced the defendant. If error, it was harmless error. However, we think the investment record was admissible at least for the purpose of showing to what date the county treasurer had been paid the interest on the bonds.

There being no substantial error, the judgment is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.